THE STATE OF OHIO, APPELLEE, *v.*
WALDEN, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v.*
BROWN, APPELLANT.

(Nos. 10757 and 10952, 10758 and
10951—Decided October 11, 1988.)

*Lee C. Falke,* prosecuting attorney, and *George A. Katchmer, Jr.,* for appellee.

*Nicholas L. Gerren, Jr.,* for appellant Charles M. Walden.

*Richard T. Brown,* for appellant James K. Brown.

BROGAN, J. These four appeals stem out of one case brought before the Montgomery County Court of Common Pleas. Three defendants were each charged with four counts of securities law violations and one count of grand theft stemming from a securities fraud scheme. The two appealing defendants, James K. Brown and Charles M. Walden, were each sentenced to five concurrent one-year prison terms. The sentences were suspended and they were each put on five years' probation. One condition of probation was to make restitution of the money stolen from the victims of the scheme. The defendants failed to pay the first $1,500 installment of restitution within the time required by the court below. That court then held a hearing at which it revoked both probations and reinstated the prison sentences. The defendants appealed both the restitution order and the probation revocation separately. Taking the four appeals together, the defendants essentially assign error to the trial court's decision to require restitution and its decision to revoke the probations because they were "unlawful, unreasonable and arbitrary" and because the decisions acted "to the substantial prejudice of the defendant[s] * * *."

First, we address the assignment of error alleging that the requirement of restitution itself was improper. We note that the court is expressly granted the power to require a probationer to make restitution by R.C. 2929.11(D) and (E) and by R.C. 2951.02(C), which states, in part:

"* * * In the interests of doing justice, rehabilitating the offender, and insuring his good behavior, the court may impose additional requirements [of probation] on the offender, including, but not limited to, requiring the offender to make restitution * * * for all or part of the value of the property that is the subject of any theft offense * * * that the person committed. * * *"

We cannot substitute our judgment for that of the court below and find that the court abused its discretion in requiring restitution if we can find some support for its decision in the record. The court below based its finding of guilty, after the defendants pled no contest, on the evidence contained in the grand jury indictment. That in-

dictment included a count of grand theft of an amount over $5,000, but the exact amount of the theft was not specified in that document.

At the time of the defendants' pleas, the court indicated that although the defendants were eligible for probation, "much will depend on what I learn in a presentence report about your conduct in the past, more facts about this particular offense, so that the Court is not promising probation."

The presentence report indicates the defendants sold shares of stock in the Gem City Life Holding Company to two hundred twenty members of the public without registering the securities or obtaining a securities license through the state of Ohio. The report indicates the defendants obtained approximately $181,000 from the investors of which approximately $122,000 was deposited into the personal accounts of defendants.

Both defendants informed the probation department investigator that they believed their actions were lawful as they had received guidance from a representative of the Ohio Department of Securities and their attorney. Defendant Brown told the investigator the funds had been dissipated in the payment of salaries and other office expenses. Walden stated it was necessary to spend large amounts of money to "impress potential buyers." Neither defendant expressed remorse for their actions in the losses suffered by their victims. Brown stated he felt he did not owe restitution because the investors were aware of the fact that their investment would be forfeited should the company not materialize.

Neither defendant had any prior criminal history and the probation officers recommended probation with a requirement of restitution to the victims as a condition of probation.

In the transcript of the *revocation* hearing, the judge referred to the amount of restitution as "somewhere in the neighborhood of $175,000," to which the probation officer responded, "I believe it is a hundred and eighty one, your Honor." On the termination entry forms, where the amount of restitution is not listed, the entry states:

"As a condition of probation defendant is to pay restitution through the Adult Probation Department. $1500.00 is to be paid with [*sic*] ninety days."

This order does not tell us how much restitution is to be paid. Clearly, the defendants had ninety days to pay $1,500.

Although the original sentence placing the defendants on probation and ordering restitution does not state the total amount of restitution required, neither defendant raises any assignment which contends the sentence was vague or indefinite. In fact, both defendants concede they understood the trial court's sentence requiring them to make full restitution of approximately $180,000 in the five-year period of probation. Also, there are two probationers who are required to meet the restitution order.

Defendant Walden contends in his first assignment that the court's sentence was arbitrary, capricious and unlawful, because this sentence would require him to pay $3,150 per month over the sixty-month period of probation and he has only a net disposable income of $65 per month.

The sentencing order does not set any time periods of payment save the initial $1,500 requirement and the requirement of restitution by the conclusion of the probation period. The court is not required merely to consider disposable income of a probationer but may also consider whether the probationer has other assets which may be liquidated to meet the restitution order. Also, the economic cir-

cumstances of the probationer may change during the probation period allowing for a more generous repayment schedule. Walden's first assignment of error is overruled.

Both defendants contend the trial court erred in revoking their probation in that the court refused to permit them to provide evidence concerning their inability to meet the restitution conditions of their probation.

The court below clearly stated that it was revoking probation only because of the failure of the defendants to pay $1,500 within ninety days after sentencing. The court allowed both defendants to present evidence of whether they paid on time, and the court asked both defendants for an explanation of why they did not pay on time, but the court clearly stated that the explanations would not be relevant to its decision to revoke probation. The court only considered whether they did in fact pay.

Both defendants asserted a lack of funds as one reason that they did not pay restitution on time. Defendant Brown did pay part of the required initial payment on time but he only paid the balance of the $1,500 after he received notice that his probation was going to be revoked because the ninety days within which to pay the first $1,500 in restitution had expired.

The court said in its decision:

"We are confronted with conmen and then they want to con the Court as to why they should be put on probation and one of the reasons I said I want $1,500 within ninety days with no excuses is to see what ability each of these persons might have to make restitution and when I find they can't make the $1,500 payment, that shows they don't have much ability to make restitution and if they can't make restitution, they should go to jail, it's just that simple."

Unfortunately, it is not that simple. We direct the court below to our decision in *State* v. *Scott* (1982), 6 Ohio App. 3d 39, 6 OBR 150, 452 N.E. 2d 517, where we said that it violates the Equal Protection Clause of the United States Constitution to revoke someone's probation simply because he or she is too poor to pay restitution and the record shows no evidence that the failure to pay was willful or intentional or that failure to obtain employment, in order to pay, was willful or intentional.

Since we wrote *Scott, supra,* the Supreme Court of the United States has clarified its position on the procedure mandated by due process when faced with revocation of probation based on the ability of the probationer to make restitution. This clarification came in the decision of *Bearden* v. *Georgia* (1983), 461 U.S. 660. The *Bearden* court based its analysis on its previous rulings in *Williams* v. *Illinois* (1970), 399 U.S. 235, and *Tate* v. *Short* (1971), 401 U.S. 395, which were discussed by us in *Scott, supra.* The court, in *Bearden*, concluded that a sentencing court must inquire into (and consider) the reasons for the failure to pay restitution before it can revoke probation based on that failure.

Justice Sandra Day O'Connor, writing for an unanimous court, wrote in *Bearden*, at 665-673:

"The question presented here is whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate.* * *

"* * *

"* * * *In other words, if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it.* Both *Williams*

and *Tate* carefully distinguished this substantive limitation on the imprisonment of indigents from the situation where a defendant was at fault in failing to pay the fine. As the Court made clear in *Williams,* 'nothing in our decision today precludes imprisonment for willful refusal to pay a fine or court costs.' 399 U.S., at 242, n. 19. Likewise in *Tate,* the Court 'emphasize[d] that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so.' 401 U.S., at 400.

"This distinction, based on the reasons for nonpayment, is of critical importance here. If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. See ALI, Model Penal Code § 302.2(1) (Prop. Off. Draft. 1962). Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. This lack of fault provides a 'substantial reaso[n] which justifie[s] or mitigate[s] the violation and make[s] revocation inappropriate.' *Gagnon* v. *Scarpelli,* 411 U.S. 778, 790 (1973). Cf. *Zablocki* v. *Redhail,* 434 U.S. 374, 400 (1978) (Powell, J., concurring) * * *.

"The State, of course, has a fundamental interest in appropriately punishing persons — rich and poor — who violate its criminal laws. A defendant's poverty in no way immunizes him from punishment. Thus, when determining initially whether the State's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources. See *Williams* v. *New York,* 337 U.S. 241, 250, and n. 15 (1949). As we said in *Williams* v. *Illinois,* '[a]fter having taken into consideration the wide range of factors underlying the exercise of his sentencing function, nothing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law.' 399 U.S., at 243.

"The decision to place the defendant on probation, however, reflects a determination by the sentencing court that the State's penological interests do not require imprisonment. See *Williams* v. *Illinois, supra,* at 264 (Harlan, J., concurring); *Wood* v. *Georgia,* 450 U.S. 261, 286-287 (1981) (White, J., dissenting). A probationer's failure to make reasonable efforts to repay his debt to society may indicate that this original determination needs reevaluation, and imprisonment may now be required to satisfy the State's interests. But a probationer who has made sufficient bona fide efforts to pay his fine and restitution, and who has complied with the other conditions of probation, has demonstrated a willingness to pay his debt to society and an ability to conform his conduct to social norms. * * *

"* * *

"Third, and most plausibly, the State argues that its interests in punishing the lawbreaker and deterring others from criminal behavior require it to revoke probation for failure

to pay a fine or restitution. The State clearly has an interest in punishment and deterrence, but this interest can often be served fully by alternative means. As we said in *Williams,* 399 U.S., at 244, and reiterated in *Tate,* 401 U.S., at 399, '[t]he State is not powerless to enforce judgments against those financially unable to pay a fine.' For example, the sentencing court could extend the time for making payments, or reduce the fine, or direct that the probationer perform some form of labor or public service in lieu of the fine. Justice Harlan appropriately observed in his concurring opinion in *Williams* that 'the deterrent effect of a fine is apt to derive more from its pinch on the purse than the time of payment.' 399 U.S., at 265. Indeed, given the general flexibility of tailoring fines to the resources of a defendant, or even permitting the defendant to do specified work to satisfy the fine, see *Williams, supra,* at 244, n. 21, a sentencing court can often establish a reduced fine of alternative public service in lieu of a fine that adequately serves the State's goals of punishment and deterrence, given the defendant's diminished financial resources. Only if the sentencing court determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence may the State imprison a probationer who has made sufficient bona fide efforts to pay.

"We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. *If the proba-*

*tioner could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine.* Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." (Emphasis added and footnotes omitted.)

In the matter *sub judice,* the trial court presumably followed the statutory factors in imposing the sentence upon the defendants. The court apparently determined that the penological interests of the state of Ohio would be adequately served by placing the defendants on probation and requiring restitution to the unfortunate victims of the defendants' criminal activity. The trial court erred in not permitting the defendants an opportunity to present evidence as to why the initial $1,500 restitution installment was not paid in a timely manner.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WILSON, J., concurs.

WOLFF, J., concurring in opinion and concurring separately. Although concurring in the majority opinion, I think some aspects of this case merit further comment.

While the restitution orders are in-

deed silent as to the total amount of restitution ordered, in my opinion the restitution orders nevertheless reflect with sufficient clarity that each defendant is responsible for complete restitution, and that each was to pay $1,500 toward that obligation within ninety days of the final judgment.

As a practical matter, the orders could not be much more specific. The judgments in these cases contemplate probationary periods of up to five years. So long as the restitution order is sufficiently clear as to the total amount to be paid, we must recognize the need for flexibility in the trial court's administration of the restitution process, and that it is a prerogative of the trial court to delegate to its probation department the responsibility for establishing and revising, if necessary, the probationer's payment plan. Probation cannot be revoked in the absence of an evidentiary hearing. Hence, a probationer will always have the opportunity to contest in the trial court, and on appeal, the reasonableness of the probation department's payment schedule, as applied to his particular circumstances. I think it neither necessary nor wise to require the trial court, at the outset of the up to five-year probationary period, to key the total amount of restitution to what then appears to be the probationer's ability to pay. Nor do I think it necessary or wise to require the trial court to establish a long-range repayment plan. The fortunes of probationers are subject to unpredictable upswings and downturns over the probationary period. All that should be required is that the probationer be accorded reasonable treatment under his particular circumstances. The probation department is in a better position than the trial court to assess these circumstances. The reasonableness of the probation department's conduct relative to the probationer's circumstances is always subject to judicial scrutiny, first in the trial court, and then on appeal. I do not suggest for a moment that a probationer's failure to make the total restitution ordered should result in revocation of probation if, in fact, the order proves, over time, to be unreasonable as applied to his particular circumstances. My thinking is the same as to nonpayment under the probation department's payment schedule.

The orders in these cases were not necessarily unreasonable when made. Although complete restitution within five years may presently appear to be an impossibility, the defendants' future circumstances may be such as to enable them to make complete restitution. A winning lottery ticket is all that it would take. Nor do I think the $1,500 installment payment order was necessarily unreasonable when made and, remarkably, only Walden argues that it was. Brown, on the other hand, wants this court to order that he pay $500 per month for five years. Although Walden contends he has but $65 disposable net income per month, a restitution order, as the majority observes, need not necessarily be keyed to net disposable income. The contention that the restitution orders were unreasonable when made is without merit.

The trial court improperly revoked defendants' probation. The majority cites *Bearden* v. *Georgia*, which is dispositive. The trial court made it abundantly clear that the only relevant question was whether defendants had made timely payments of restitution. Under *Bearden*, this inquiry was too narrow, and the determination to revoke, made solely on the fact of nonpayment, was improper.

The trial court indicated it ordered each defendant to make a $1,500 payment within ninety days to determine whether they could indeed make resti-

166

tution and, hence, qualify for probation. While this criterion for probation eligibility is legitimate under *Bearden,* the trial court's method was flawed. In placing defendants on probation, the trial court "reflect[ed] a * * * determination * * * that the State's penological interests * * * [did] not require imprisonment." *Bearden, supra,* at 670. Having made that determination, the trial court's inquiry could not be restricted thereafter to the sole question of whether defendants had paid.

I think the trial court could have assessed defendants' ability to make restitution and, thus, their worthiness of probation, without running afoul of *Bearden.* After receiving the presentence reports, the court could have postponed final disposition for ninety days, and told defendants that they would be considered for probation if they appeared in court ninety days hence with $1,500 in cash, money order, or certified check in hand. The determination of whether the state's penological interests required imprisonment would have thereby been delayed until the trial court had the information it said it needed to determine whether defendants were worthy of probation. At that point, the determination to place defendants on probation or sentence them to prison could have been made, together with the appropriate orders implementing that determination.