DECISION.
Defendant-appellant Talib Douthard was indicted in the case numbered B-9807686 for carrying a concealed weapon. He pleaded no contest on February 11, 1999. Douthard was convicted and placed on community control for two years. The terms of his community control required him to serve three hundred hours of community service, finish his college education and pay the court costs.
Douthard was indicted on July 16, 1999, for possession of marijuana in the case numbered B-9904079. A jury trial commenced on March 27, 2000. On March 29, 2000, the trial court declared a mistrial over Douthard's objection. The court ordered a new trial. Douthard then moved to dismiss the indictment on the grounds of double jeopardy. The trial court overruled Douthard's motion. Following a second jury trial, Douthard was convicted of possessing marijuana and sentenced to two years' incarceration.
Following a hearing, the trial court revoked Douthard's community control on the carrying-a-concealed-weapon conviction and sentenced him to one year's incarceration to be served consecutively with the sentence for possession of marijuana. At the time his community control was revoked, Douthard had already completed three hundred hours of community service. Douthard has appealed his conviction for possession of marijuana in the case numbered C-000354, and the revocation of his community control in the case numbered C-000355.
Douthard's first assignment of error alleges that the trial court erred in overruling his motion to dismiss the marijauna indictment on double-jeopardy grounds.
The Double Jeopardy Clauses of the United States and the Ohio Constitutions protect against successive prosecutions for the same offense. See Fifth Amendment to the United States Constitution; Section10, Article I, Ohio Constitution; United States v. Dixon (1993),509 U.S. 688, 113 S.Ct. 2849. Jeopardy attaches when a criminal jury is empaneled and sworn. See State v. Glover (1988), 35 Ohio St.3d 18,517 N.E.2d 900; State v. Widner (1981), 68 Ohio St.2d 188, 429 N.E.2d 1065.
The double-jeopardy provisions protect the valued right of the accused to have his trial concluded by a particular tribunal. See Arizona v.Washington (1978), 434 U.S. 497, 98 S.Ct. 824. In some cases, the accused's "valued right" may be "subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." Id. The question of whether a second trial is barred by double jeopardy depends on whether there is a "manifest necessity" or "high degree" of necessity for ordering a mistrial to preserve "the ends of public justice." Id.; see State v.Glover, supra; State v. Widner, supra. The trial court must exercise sound discretion in declaring a mistrial, and there must be a high degree of necessity for the court's decision. See State v. Riley (Aug. 13, 1980), Hamilton App. No. C-790631, unreported. The burden is on the prosecution to demonstrate the "manifest necessity" for a mistrial declared over the defendant's objection. See Arizona v. Washington,supra.
In Arizona v. Washington, supra, the United States Supreme Court citedUnited States v. Perez (1824), 9 Wheat 579, 580, which stated,
 We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.
 The question that we must decide is whether a manifest necessity existed to warrant a mistrial in Douthard's first trial on the possession-of-marijuana charge.
 During the voir dire of the prospective jurors in Douthard's first trial, the following transpired:
 [DEFENSE COUNSEL]: Mr. Detherage, I'll ask you this question. Which do you think is worse? An innocent person being convicted and going to jail or a guilty person being acquitted and going free?
 PROSPECTIVE JUROR 10: That's a hard question. I would have to say the innocent going to jail.
[DEFENSE COUNSEL]: Ms. Dion, what about you?
 PROSPECTIVE JUROR 3: I think the innocent person, the person who was innocent, is considered innocent.
 [DEFENSE COUNSEL]: Does anybody think that it would be worse to have the guilty person go free? And it's okay. That's why we're having this discussion. Does anybody think that?
 Let me ask you this then. Ms. Mette, why would it be worse for an innocent person to go to jail?
 PROSPECTIVE JUROR 1: Because the law says you're innocent.
[DEFENSE COUNSEL]: Ms. Metzger, what about you?
 THE COURT: All right. The prosecutor may not object, but I'm going to object. The question of punishment in this case does not enter into it. You're not to assume based on anything you do that anybody is going to get locked up or not get locked up. That's my decision and it really has very little to do with what you say or do.
 Your question is guilt or innocence in this matter. Actually it's not guilt or innocence, it's guilty or not guilty. Guilt must be shown to you beyond a reasonable doubt, every element of a crime. If it's not, your duty will be to find the defendant not guilty.
 That's the issue. The issue is not incarceration. If you think somebody should be locked up but the State hasn't proven the case, then your duty is to find the person not guilty.
 Conversely, if you don't think they have proved their case, and vice-versa, same way. Okay? That's the issue that you're to decide solely. Guilty or not guilty of the offense. Next question.
(T.p. 252-254.)
Subsequently, during the state's case-in-chief, when defense counsel was cross-examining one of the investigating officers, the following occurred:
 Now, is that the best of your recollection or is that when it was? You're the case agent. You said you have all the facts about this case. When was the first time?
Getting a little old, you know.
I understand that.
My memory is not as good.
 Mr. Douthard's not old and his freedom's on the line, so you tell me.
My memory is not as good as it used to be.
* * *
 THE COURT: Do you want a mistrial, State of Ohio, due to the last remark about his freedom being on the line?
Do you want a few minutes to think about it?
* * *
 [THE STATE]: I did review the comment of [defense counsel] while Your Honor was speaking to the students in the courtroom.
 After reviewing the comment and talking with the officer, and considering the comment and the effect it had on the jury, we are going to move for a mistrial at this point, Your Honor.
 THE COURT: It will be granted. We've discussed this a little bit in chambers. I know the defense's preference would be — I think the defense's position would be, I think, A, that they didn't do anything wrong; and B, secondarily a curative instruction may be appropriate.
 I think it's the second time we've gotten into the question of punishment, and one time was during the voir dire indirectly, and then there was a question directly.
 And over the defense's strong objection, I'm going to grant the motion for mistrial.
(T.p. 404-406.)
In Johnson v. Karnes (C.A.6, 1999), 198 F.3d 589, an Ohio jury had acquitted Johnson of aggravated robbery and aggravated burglary, but could not reach a verdict on kidnapping, felonious-assault and weapons charges. The trial court declared a mistrial as to the latter three counts. In a subsequent trial on the three charges, defense counsel asked the prosecuting witness whether it was true that Johnson had been acquitted of robbery. The prosecutor objected and requested the court to declare a mistrial. The trial court granted the motion for a mistrial over defense counsel's objection, stating that the question had been improper and that the "situation could not be cured." Johnson filed a motion to dismiss the three counts on double-jeopardy grounds, which the trial court overruled. Johnson then filed a federal petition for a writ of habeas corpus.
In granting the writ, the Sixth Circuit Court of Appeals held that there had been no manifest necessity for the declaration of a mistrial. The Sixth Circuit pointed out that the trial judge had made his decision after only a short recess and brief arguments by both parties. The state had failed to articulate why a mistrial was a manifest necessity. Further, the court found it significant that the trial judge had failed to consider less drastic alternatives to declaring a mistrial.
In Harpster v. Ohio, (C.A.6, 1997), 128 F.3d 322, the Sixth Circuit granted a petition for a writ of habeas corpus on double-jeopardy grounds, holding that the Ohio state court had declared a mistrial without a manifest necessity, over the defendant's objection.
Prior to Harpster's arrest, a police officer had read Harpster the penalty provision for the crime of felonious sexual penetration of an underage victim, telling Harpster that if he confessed he might be eligible for remedial counseling instead of the mandatory life sentence. At trial, defense counsel argued in opening statement that Harpster had confessed only after hearing that the punishment for the offense was mandatory and "terrible." Defense counsel stated that Harpster feared being beaten and raped in prison, and never seeing his son again. On cross-examination of the arresting officer, defense counsel elicited testimony that a conviction "meant no probation" and that the penalty for the crime was "stiff."
The trial judge granted a mistrial over defense counsel's objection, finding that incurable prejudice existed because the jury would conclude that probation was not an option for Harpster. The judge explained that he was granting the mistrial because the "cumulative effect of a number of statements" made by defense counsel, in opening statement through the questioning of the arresting officer, had prejudiced the jury by allowing it to conclude that, if convicted, Harpster would go to prison and have his fears realized.
In granting Harpster's petition for a writ of habeas corpus, the Sixth Circuit stated,
 We find that, even if [the arresting officer's] testimony was irrelevant, the amount of prejudice that could have existed, if any existed at all, was miniscule. During the cross-examination of [the arresting officer], the jury learned that probation would not be available, but it never learned the length of the sentence that would be imposed. Without knowing the length of the sentence that petitioner faced, the fact that probation would not be available is unlikely to prejudice the jury or affect its ability to reach an impartial verdict. When the penalty is "stiff," no juror would expect a defendant to receive probation. Although the decision of a trial court to declare a mistrial based on potential juror bias is entitled to special respect, it would be an unreasonable application of the law, as established by Supreme Court precedent, to conclude that manifest necessity existed for a mistrial in this case. We agree with the District Court that a simple corrective instruction would have sufficiently protected against juror bias. Because this case lacks the urgent circumstances or high degree of necessity required to justify a mistrial, double jeopardy bars the retrial of petitioner.
Id. at 330.
In Sidney v. Little (1997), 119 Ohio App.3d 193, 694 N.E.2d 1386, Little was charged with driving under the influence of alcohol. During the voir dire of the jury, defense counsel commented that Little had no prior traffic record. The trial court sustained the prosecutor's objection to the remark and instructed the jury to disregard it. In opening statement, defense counsel again referred to Little's clean driving record. The prosecutor objected and requested a mistrial. Defense counsel argued that Little's driving record was admissible pursuant to Evid.R. 404 and 405. The trial court granted the prosecutor's motion for a mistrial. Little then filed a motion to dismiss the charge on double-jeopardy grounds, which the trial court overruled.
The Third Appellate District held that the trial court had erred in declaring a mistrial and in refusing to dismiss the charge on double-jeopardy grounds, stating,
 An order of the trial judge declaring a mistrial during the course of a criminal trial, on motion of the state, is error and contrary to law, constituting a failure to exercise sound discretion, where, taking all the circumstances under consideration, there is no manifest necessity for the mistrial, no extraordinary and striking circumstances and no end of public justice served by a mistrial, and where the judge has not made a scrupulous search for alternatives to deal with the problem.
Id. at 197, 694 N.E.2d 1388.
We hold in the case sub judice that defense counsel's fairly innocuous references to punishment were not so prejudicial as to constitute manifest necessity for a mistrial. The jury was not informed of the sentence that could have been imposed upon Douthard if he had been convicted. Further, the jury was not encouraged to acquit Douthard based upon any punishment that might be imposed.
In addition, the trial court did not seriously consider any alternatives to declaring a mistrial. At least some effort on the part of the trial court to explore alternatives must be apparent before a high degree of necessity is demonstrated. See Glover v. McMackin (C.A.6, 1991), 950 F.2d 1236. The remarks made by defense counsel were not so prejudicial that they rendered a curative instruction ineffective. SeeState v. Miller (Oct. 31, 1997), Montgomery App. No. 15552, unreported.
We hold that no manifest necessity existed for the declaration of a mistrial. Therefore, retrial of Douthard was barred by double jeopardy. The trial court erred in overruling Douthard's motion to dismiss the indictment on double-jeopardy grounds. The first assignment of error is sustained.
Douthard's second assignment of error alleges that the trial court erred in revoking his community control in the case numbered C-9807686, because the revocation was based upon his conviction and the evidence adduced in the second trial on the possession-of-marijuana charge, which was held in violation of the Double Jeopardy Clauses. We agree.
The state argues that even if there was a double-jeopardy violation, the community-control revocation was proper because it was also based upon Douthard's failure to pay court costs and fees as ordered.
In order to revoke his community control for nonpayment of court costs and fees, Douthard's failure must have been willful and not the result of indigence. See Bearden v. Georgia (1983), 461 U.S. 660, 103 S.Ct. 2064;State v. Savoia (1991), 76 Ohio App.3d 201, 601 N.E.2d 193; State v.Walden (1988), 54 Ohio App.3d 160, 561 N.E.2d 995; State v. Crawford
(1977), 54 Ohio App.2d 86, 375 N.E.2d 69; State v. Hudson (Nov. 14, 2000), Franklin App. No. 00AP-236, unreported.
The trial court found Douthard to be indigent on several occasions during the proceedings below. The trial court found Douthard to be indigent for the purposes of appointing appellate counsel. On June 29, 2000, the trial court found Douthard to be indigent in an entry ordering that the transcripts for appeal be produced at state expense. There was no evidence that Douthard's failure to pay court costs and fees was willful or intentional. Therefore, the trial court erred in revoking Douthard's community control. The second assignment of error is sustained.
The judgments of the trial court are reversed, and Douthard is hereby discharged from further prosecution in these cases.
 ____________________________ Doan, Presiding Judge.
 Painter and Shannon, JJ., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.