THE STATE OF OHIO, APPELLEE, *v.* SCOTT, APPELLANT.

(No. 1600—Decided March 9, 1982.)

*Mr. James A. Berry,* prosecuting attorney, and *Ms. Sally L. Dilgart,* for appellee.

*Ms. Janie O. Turnbull,* for appellant.

BROGAN, J. On March 17, 1978, Ms. Gladys Scott was sentenced to a term of from two to five years at the Marysville Reformatory after pleading guilty to welfare fraud. The sentence was suspended and defendant-appellant was placed on five years probation. As a condition of that probation, she was ordered to make restitution in the amount of $9,944 at the rate of $20 per month.

In June 1981, appellant was charged with a probation violation in that she was not paying restitution as ordered. A hearing was held on this matter on June 30, 1981. The Clark County Adult Probation Office testified to the fact that Ms. Scott had made a total of $360 in payments throughout the five years.

On cross-examination, the probation department testified to the fact that the total she was required to pay in 1978 was $240 and that a total of $480 should have been paid by March 17, 1980. She had paid $360 as of April 1980. Further testimony by the probation officer revealed that Ms. Scott cooperated fully with the probation department and that she had completed job training. Due to her illnesses and age she was, however, unemployable. The chief probation officer's recommendation was that, "[t]he probation should either be terminated due to her indigency or payments waived until either she can obtain social benefits whereby she can make the minimal payment."

Ms. Scott then took the stand and testified that she had no source of income and did not have any during the five-year probationary period with the exception of three days at a nursing home and ten months when she received ADC for the care of her grandchildren. She did not receive general relief or social security. She further testified to the fact that she had several health problems including glaucoma, diabetes, cataracts and high blood pressure. She did not have the money to afford the necessary medical services for these problems.

The court then found that because the appellant failed to make her restitution as ordered, she was in violation of her probation. The court then stated, "I will revoke the probation and reimpose the sentence. However, the court will suspend execution of that sentence upon condition of a six month sentence in the county jail and that is subject to further review." No journal entry was entered by the court to reflect these actions on June 30, 1981.

The appellant then filed a premature appeal on July 2, 1981, appealing the "judgment" of the court of June 30, 1981. After this filing, a second hearing was held on July 2, 1981. The court stated that he had not reimposed the sentence at Marysville at the first hearing. The court then asked the appellant whether she wanted to accept the six-month jail sentence to which she indicated, "no." After that the court finished its question "as part of your probation." The court then revoked the probation of the appellant and reimposed the original sentence of two to five years at Marysville. A journal entry was entered reflecting the court's action of revoking the appellant's probation and imposing sentence.

We will consider appellant's premature notice of appeal of July 2, 1981, as the notice of appeal of the court's entry of probation revocation and sentence dated July 6, 1981.

I

"Appellant had no ability to pay a fine imposed upon her as a condition of probation. Therefore, the trial court erred in revoking her probation and [in imposing] incarceration for reasons of non-payment of that fine."

In the interests of doing justice, rehabilitating the offender, and insuring his good behavior, the court may impose additional requirements of probation, including requiring the offender to make

restitution for all or part of the value of the property that is the subject of any theft offense that the person has committed, and compliance with the additional requirements shall also be a condition of the offender's probation or other suspension. R.C. 2951.02 (C). Such a provision endows the trial court with broad general powers in relation to conditions which may be imposed upon one placed on probation. *Tabor* v. *Maxwell* (1963), 175 Ohio St. 373 [25 O.O.2d 276]. The right of the defendant to continue on probation rests within the sound discretion of the court. *State* v. *Skypeck* (1945), 77 Ohio App. 225 [32 O.O. 518].

It has been held that while the quantum of evidence required to support a revocation of probation is not "beyond a reasonable doubt," there must be evidence of a substantial nature in order to find that revocation is justified. *State* v. *Mingua* (1974), 42 Ohio App. 2d 35 [21 O.O.2d 234].

Probation and parole are forms of conditional liberty, not quite as entitled to constitutional protection as unqualified liberty, but nevertheless important. *Gagnon* v. *Scarpelli* (1973), 411 U.S. 778 [71 O.O.2d 279]. As the court said in *Gagnon*:

"it is clear * * * that a probationer can no longer be denied due process, in reliance on the dictum in *Escoe* v. *Zerbst* * * * that probation is an 'act of grace.' " 411 U.S. 778, 782, fn. 4.

It violates the Equal Protection Clause to revoke someone's probation simply because he is too poor to pay the costs of prosecution. *Tate* v. *Short* (1971), 401 U.S. 395 (inability to pay fine). In *State* v. *Crawford* (1977), 54 Ohio App. 2d 86 [8 O.O.3d 135], the sentencing court revoked Crawford's probation for failing to abide by the condition that he pay a fine. The evidence, however, showed only that he had no income; he had not refused to pay. In effect, his probation was revoked because of his economic status — a clear violation of equal protection — and not because his conduct proved him to be a risk for rehabilitation. It is unconstitutionally discriminatory to revoke probation and imprison an indigent probationer for the nonpayment of fines and costs, where the record shows that the only reason for nonpayment is an inability to pay, and there is no evidence that the probationer willfully or intentionally failed or refused to pay such fines and costs or willfully or intentionally failed to obtain employment in order to pay them. *State* v. *Crawford, supra.*

In determining whether failure to make restitution within the original probation period constitutes cause for extending probation and continuing restitution, the trial court should first establish a clear account of exactly how much defendant has paid and what the source of each payment was. Other pertinent considerations in determining ability to pay include employment history during the probationary period, employment status at the time of the extension, prospects for future employment, sources of income, cost of supporting probationer's dependents, and other competing demands on probationer's income. If probationer lacks capacity to pay restitution and has demonstrated a good faith effort during probation, failure to make restitution cannot be cause for extending probation. *Huggett* v. *State* (1978), 83 Wis. 2d 790, 266 N.W. 2d 403.

In *United States* v. *Taylor* (C.A. 4, 1963), 321 F. 2d 339, the accused was convicted of tax offenses and was granted probation on condition he pay fines within a specified time. The court held that bare nonpayment of fines was not conclusive of disobedience of probation terms and did not subject him to imprisonment as of course; his probation was not beyond redemption if in reality he was too poor to pay, not to blame for it, and sincere in his efforts. See, also, *United States* v. *Boswell* (C.A. 5, 1979), 605 F. 2d 171; *United States* v. *Wilson* (C.A. 2, 1972), 469 F. 2d

368; and *People* v. *Tidwell* (1975), 33 Ill. App. 3d 232, 338 N.E. 2d 113.

Section 3.2 of the American Bar Association Standards Relating to Probation (Approved Draft 1970) provides as follows:

"(c) Conditions may appropriately deal with matters such as the following:

"* * *

"(viii) making restitution of the fruits of the crime or reparation for loss or damage caused thereby.

"(d) Conditions requiring payment of * * * restitution * * * should not go beyond the probationer's ability to pay."

See, also, Model Penal Code, Sections 301.1(1) and (2) (Proposed Official Draft 1962).

In the matter *sub judice*, the state presented evidence that the appellant was in arrears in her obligation to pay restitution. The probation officer testified the appellant had made five initial payments from March 17, 1978 to April 1980 for a total of $360. Her annual obligation for restitution was $20 per month or $240 per year, so as of June 1981 she was approximately $420 in arrears.

The probation officer testified the appellant was cooperative and completed vocational training. He testified she could not find employment after working for a short time at Wittenberg University. He testified that due to her age and health she has been unable to find employment since that time. He recommended to the court that appellant's probation be terminated or restitution payments waived until she can obtain social benefits whereby she could make the minimal payment. The state presented no other evidence.

The appellant testified she had no source of income and was being supported by her two sons and daughter. She testified she worked briefly for about three and one half days and earned $75 which she spent on bills. She testified she has glaucoma, high blood pressure and diabetes. She testified she could not afford her medication and was presently receiving ADC for her four grandchildren for whom she has been caring since March 1981. The defense rested and no other testimony was presented.

Based on this testimony, the court found the defendant-appellant in violation of her probation for failure to make restitution. We believe that finding to be erroneous and an abuse of discretion by the trial court. There was no testimony presented that she was capable of making the restitution payments. There was no testimony appellant willfully or intentionally violated the terms of her probation. Indeed, in all other respects, appellant appeared to be a model probationer. She obtained vocational training, sought employment, and kept close contact with her probation counselor. While the terms of the restitution schedule were quite reasonable, there was no showing appellant could even meet those terms. In short, there was no evidence of a substantial nature in order to find the revocation was justified. *State* v. *Mingua, supra.*

The first assignment of error is well-taken.

## II

"Assuming the trial court did not err in revoking probation: error was still committed when a harsher sentence was imposed then [*sic*] when the original finding of revocation was made."

We find no merit in appellant's second assignment of error. There was only *one* probation revocation. The court offered the appellant the opportunity to serve her sentence for the probation revocation in the county jail. She refused. The court, therefore, having revoked her probation and having offered a reasonable alternative to the appellant had no choice but to reimpose the original sentence given appellant upon her conviction.

The second assignment of error is overruled.

Judgment is hereby reversed.

*Judgment reversed.*

KERNS, P.J., and WILSON, J., concur.