This appeal arises out of a judgment revoking Appellants probation and reinstating his original sentence of incarceration. Appellant asserts that the revocation was against the manifest weight of the evidence and argues that he was denied due process because the trial court failed to hold a final revocation hearing. Based upon the record presented, this Court overrules the assignments of error and affirms the judgment revoking probation.
On February 9, 1995, the trial court sentenced Appellant to a definite term of one and one-half years of incarceration after Appellant previously entered a plea of guilty to the charge of breaking and entering in violation of R.C. 2911.13. After numerous motions for shock probation and sentence modifications, the trial court granted Appellant early release on July 25, 1995. In its order granting the release, the court placed Appellant on probation for a period of five years and warned him in the order that if he violated any of the conditions of probation, the court would revoke his probation and reimpose the original sentence. Appellant was released from custody.
On February 25, 1997, Appellee filed a motion to revoke Appellant's probation stating that Appellant had violated his probation conditions by being charged with breaking and entering and theft in one case and a second charge of theft in another matter. On February 28, 1997, the court sent a notice to all parties advising them that the motion to revoke probation would be heard on March 5, 1997. The parties agreed to continue the hearing to March 12, 1997 and on that date the court found Appellant indigent and appointed him counsel for the revocation hearing. The court also sent a notice to all parties continuing Appellant's revocation hearing indefinitely. On March 13, 1997, the court sent a notice scheduling the motion to revoke probation for March 28, 1997.
On March 28, 1997, the court held the hearing on the States motion to revoke Appellant's probation. Since the court based its decision to revoke Appellant's probation on only the issue of theft of radar detectors, we will set forth the relevant information only on that issue.
At the hearing, the State presented two witnesses; Bradley Stiles and Deputy Curtis Shreves. Stiles testified that he and Appellant went out drinking in August of 1996 and upon driving back to Appellant's house around 12:30 a.m., Stiles pulled his car off the road toward some cars. (Tr. P. 6) Stiles testified that they both got out of his car and looked into the parked vehicles and decided to steal the radar detectors they saw inside. (Tr. p. 7). Stiles recalled that he touched the cars to ensure that no alarms would sound (Tr. p. 6-7) and that he opened the doors to the unlocked cars and took three radar detectors while Appellant watched the surrounding houses. (Tr. p. 8). Stiles testified that Appellant handled the radar detectors and scratched the serial numbers off of them after he got them out of the vehicles. (Tr. p. 12). Stiles also testified that later in August of 1996, he and Appellant took some well pipe from the owner without his permission. (Tr. p. 10). When asked by the State, Stiles stated that he received no special treatment or benefit from testifying against Appellant. (Tr. p. 15). Stiles admitted that he had been to detention as a juvenile but had never before served time in prison.
Defense counsel conducted full cross-examination of Stiles, questioning his veracity and his reasons for testifying against Appellant. (Tr. p. 14). Stiles denied telling others that if he was returning to prison, he was taking someone with him. (Tr. p. 14).
Appellee called Deputy Curtis Shreves to the stand. Deputy Shreves testified that he investigated the theft of the radar detectors and took Stiles' statement to police. (Tr. p. 16) On cross-examination, Deputy Shreves indicated that Stiles brought up Appellant's name upon questioning about the radar detectors and stated that Stiles was the only person connecting Appellant to the radar detectors. (Tr. p. 20). Deputy Shreves was not certain but did not believe that the radar detectors had serial numbers on them. (Tr. pp. 17-18). Deputy Shreves recalled speaking to Appellant about the radar detectors and indicated that Appellant denied involvement in the theft and testified that Appellant did not have the radar detectors in his possession upon recovery, but that Stiles, Stiles mother and a friend had the detectors in their cars. (Tr. p. 19). Deputy Shreves also testified regarding the well pipe.
Appellant presented three witnesses of his own. The owner of the radar detectors testified that he had the detectors back in his possession and that he did not think that the detectors ever had serial numbers on them. (Tr. p. 24). On cross-examination, the owner admitted that it was possible that an area on the radar detectors could have had serial numbers on them.
Appellant also called John Daugherty, who presented testimony about the well pipe. Appellant's last witness was Donny Daugherty, who testified that he accompanied Stiles and Appellant to obtain the well pipe. (Tr. p. 34). Mr. Daugherty admitted that he entered a plea of guilty to theft and criminal trespassing for the theft of the pipe. Mr. Daugherty also recalled hearing Stiles make a statement on a CE a long time ago that if he was ever to get in trouble with the law, he would take someone with him. (Tr. p. 40). Appellee cross-examined Mr. Daugherty regarding inconsistencies in his statement to police concerning the well pipe.
After the defense rested, the court went over some of the terms of Appellant's probation, including that Appellant refrain from drinking alcohol, stay out of trouble with the law and not commit any further violations of the law. (Tr. p. 48). The court found that insufficient evidence was presented showing that Appellant knew that he took the well pipe without permission of the owners.
However, the court found sufficient evidence presented to show that Appellant was involved in the theft of the radar detectors from the cars and that this activity was sufficient to warrant a revocation of his probation. (Tr. p. 49-50). On March 28, 1997, the court issued a judgment entry revoking Appellant's probation and reimposing the balance of his original sentence. The court also denied Appellants request for bail.
On April 3, 1997, Appellant filed a motion for relief from judgment. In this motion, he alleged that newly discovered evidence existed in that one of the witnesses testifying for the State was now supposedly recanting his testimony against Appellant. Appellants counsel admitted, however, that she was unable to verify this information.
On April 14, 1997, this Court sustained Appellants motion for suspension of sentence and release on bond pending his appeal and set bond at $2,000.00.
On July 23, 1997, Appellant filed a motion to strike Appellee's answer brief due to the fact that Appellee filed its brief four. days after a first extension of time was granted. On September 30, 1997, we overruled Appellant's motion to strike. In his appeal, Appellant raises the following as his first assignment of error:
 "THE TRIAL COURT ERRED IN REVOKING APPELLANTS PROBATION AS THE TRIAL COURTS JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant contends that the trial court did not consider all of the evidence and thus, probation revocation was against the manifest weight of the evidence. Appellant refers to the court's statement after the hearing that: "[n]othing in anything that the defense presented today went to attack the proposition presented by the State that those radar detectors were in fact stolen and were in fact stolen in concert with Stiles and Mr. Winter." (Tr. p. 48). Appellant states that he did present evidence on that issue to show that the States evidence was unreliable and contradicted, including attacking the credibility of Stiles and offering the testimony of the owner of the radar detectors who testified that serial numbers were not present on the detectors when he bought them.
Appellant's contention is misplaced. The trial court did state that the defense failed to attack the States proposition that the radar detectors were stolen and were stolen by Stiles and Appellant. (Tr. p. 48). The court was correct that Appellant did not present evidence refuting that the radar detectors were stolen. In fact, Appellant's own witness, the owner of the radar detectors, testified that he reported to police that the detectors were stolen. (Tr. p. 22)
While we find that Appellant presented some evidence refuting the existence of concert between Appellant and Stiles in the theft by attacking Stiles credibility and suggesting that he made up the story that Appellant was involved in the theft, the trial court acknowledged this evidence. The record shows that the trial court considered the evidence when it stated that it believed Stiles' testimony because it could not find that Stiles had anything to gain from making up such a story. (Tr. p. 49). The trial court found sufficient evidence to revoke Appellant's probation based upon the testimony of Stiles that Appellant was involved in the taking of the radar detectors. (Tr. pp. 49-50)
Probation is a privilege based upon compliance with conditions imposed upon the offender. The trial court can revoke the privilege upon a violation of these conditions. State v. Bell (1990), 66 Ohio App.3d 52, 57. A convicted offender has no inherent right to be conditionally released before his validly imposed sentence expires. State v. Benton (1998), 82 Ohio St.3d 316,318 [citations omitted]. In Benton, the Ohio Supreme Court quoted the United States Supreme Court's holding that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." Id., quoting Morrissey v. Brewer (1972),408 U.S. 471, 480.
In State v. Walker, this Court held that the quantum of evidence necessary to support a trial courts revocation of probation is not "* * * `beyond a reasonable doubt' but merely evidence of a substantial nature showing that the probationer has breached a term or condition of his probation." State v. Walker (July 26, 1995), Jefferson App. No. 93-J-48, *4, unreported, citing State v. Mingua (1974), 42 Ohio App.2d 35, 40. When the State meets this burden, the court is given wide latitude to revoke probation. Columbus v. Bickel (1991), 77 Ohio App.3d 26,38. Thus a trial court's decision to revoke probation will not be reversed on appeal absent an abuse of discretion. State v. Scott (1982), 6 Ohio App.3d 39, 41. An "* * * [a]buse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Further, a trial court is in the best position to weigh the evidence and determine the credibility of the witnesses. As long as some competent credible evidence supports the trial court judgment, the judgment will not be reversed as against the manifest weight of the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. A sentencing court need not wait for a criminal conviction in order to revoke probation on the basis that the probationer violated the terms of his probation by breaking the law. Bickel,77 Ohio App.3d at 33-34.
While the evidence in the instant case may have been insufficient to actually convict Appellant of a crime "beyond a reasonable doubt," the State presented evidence of a "substantial" nature that Appellant had violated the conditions of his probation based upon the testimony of Stiles. The owner of the radar detectors testified that he was unsure whether the detectors contained serial numbers but was sure that they were stolen. Stiles testified that Appellant aided in the theft and scratched the numbers off of the instruments. As the court was in the best position to determine credibility, the trial judge clearly found this testimony believable so as to find that Appellant violated the law. Appellants first assignment of error is therefore without merit.
In his second assignment of error, Appellant contends:
 "THE TRIAL COURT VIOLATED DEFENDANT-APPELLANTS CONSTITUTIONAL RIGHT TO DUE PROCESS WHEN IT FAILED TO HOLD A FINAL REVOCATION HEARING AFTER CONDUCTING THE PROBABLE CAUSE HEARING AT WHIGH [sic] IT HELD THAT THERE WAS PROBABLE CAUSE TO BELIEVE THAT DEFENDANT-APPELLANT HAD VIOLATED THE CONDITIONS OF PROBATION."
Appellant contends in this assignment that he was entitled to two separate hearings, one on probable cause and the other on the final revocation. Appellant concludes that because only one hearing was held, the trial court violated his right to due process. Appellant assumes that the hearing held by the trial court was a probable cause hearing and argues that he was denied the opportunity to address the court or to present mitigating evidence and alternatives to probation revocation in a final hearing.
Appellant incorrectly presumes that the hearing of March 28, 1997 was a probable cause hearing. The court in its written notice of the hearing date, styled it as a "motion for revocation of probation." We find that the hearing was a combined hearing both as to probable cause and final hearing for revocation of probation. In Walker, Jefferson App. No. 93-J-48, unreported, we found that although the trial court held a combined hearing on probable cause and final revocation, Appellant's due process rights under Gagnon v. Scarpelli (1973), 411 U.S. 778, 786 were nevertheless satisfied. In Morrissey v. Brewer, the United States Supreme Court set forth the minimal due process requirements for parole revocation hearings. (1972), 408 U.S. 471. In Gagnon v. Scarpelli, the Supreme Court applied the Morrissey requirements to probation revocation hearings as both hearings involved the loss of liberty. (1973), 411 U.S. 778, 786. The Court mandated that probationers must be afforded the following requirements of due process:
 "At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. 408 U.S., at 487. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the `minimum requirements of due process' include very similar elements:
 "`(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.'"
Gagnon, supra at 786, quoting Morrissey v. Brewer, supra, at 489.
A reviewing court should not reverse a revocation of probation where two separate hearings were not held unless the appellant is prejudiced by the lack of the preliminary hearing. State v. Miller (1975), 45 Ohio App.2d 301, 306. The preliminary hearing is held to determine if probable cause exists to believe that the probationer has committed acts constituting a violation of the conditions of his probation. Morrissey, supra at 485.
In State v. Delaney (1984), 11 Ohio St.3d 231, the appellant was placed on probation for two years. During his probationary period, the State brought other charges against him and eventually filed a motion to revoke his probation. The appellant was placed in jail pending the final revocation hearing which was held thirty-six days later. The State presented its case against the appellant at the revocation hearing. The appellant was present and was represented by counsel who cross-examined the States witnesses. At the close of the States case, appellants counsel moved to dismiss the charges on the ground that the appellant was not afforded a preliminary hearing to determine whether there was probable cause that a probation violation had occurred. The trial court overruled the motion and found that the appellant was afforded due process. Id. at 232. The hearing proceeded and the trial court revoked the appellants probation and reimposed the original sentence and was affirmed on appeal. Id.
The Ohio Supreme Court also affirmed. Id. at 236. The Court set forth the Morrissey-Gagnon dual purposes of the preliminary hearing: "* * * to prevent the incarceration of a probationer without probable cause and to allow independent review of the charges against him `while information is fresh and sources are available,'" (1984), 11 Ohio St.3d 231, 233, quoting Morrissey, supra. The Court explained that because a substantial time lag usually exists between an arrest and the revocation, a preliminary hearing is held in part "* * * to prevent a probationer from being incarcerated unjustly pending a final determination as to whether probation should be revoked." Id. at 233.
Emphasizing that the preliminary hearing prevents the probationer from unjust incarceration pending a final determination, the Delaney Court held that the appellant's motion or "objection" at the final revocation hearing was untimely and thus waived. Delaney, 11 Ohio St.3d 233-234. The Court further held that the lack of a preliminary hearing was not prejudicial because there was nothing offered by the appellant or found in the record to indicate that information was no longer "fresh" or sources were no longer "available" at the time of the final revocation hearing. Id. at 234. The Court also held that the purpose of the preliminary hearing was frustrated at the time of the appellant's motion as the "* * * incarceration that would have been at issue in such a hearing had already taken place" and a thirty-six day incarceration, was not unreasonable so as to be inherently prejudicial. Id. The Court footnoted this section and emphasized the due process requirements afforded in this case, including the appellants representation by counsel and the fact that no evidence was offered to show prejudice from the lack of a preliminary hearing. Id. at 236, n. 2.
The instant case is similar to Delaney in that Appellant waived his right to a separate preliminary hearing due to the delay in objecting to the lack of such a hearing. The delay in the instant case is even more distant than in Delaney because Appellant first raises this issue in his appeal to this Court. When the State presented its case, Appellant did not object. Before presenting its own witnesses, Appellant did not object. When the trial court found probable cause, revoked Appellants probation and reimposed the original sentence at the end of the hearing, Appellant did not object to the lack of a preliminary hearing. After the announcement of revocation when the court specifically asked Appellant's counsel if she had anything further, counsel stated "No, your Honor." (Tr. p. 50). At that point counsel could not have been unaware that this was more than a probable cause hearing. Yet she did not once question the process nor object.
The instant case may be distinguished only in that while Delaney was incarcerated during the pendency of the final revocation hearing, Appellant was not. If the Ohio Supreme Court found no prejudice resulting from a thirty-six day incarceration in Delaney, surely Appellant cannot argue that prejudice resulted from the lack of a preliminary hearing where he was free during the pendency of the final revocation proceeding.
Further, similar to Delaney, Appellant demonstrates no prejudice because of alleged staleness of information or the unavailability of sources due to a substantial time lag between Appellant's arrest and the final revocation hearing. The record does not show Appellant was "arrested" for probation violation or taken into custody for the alleged violations. The record reflects that Appellant was free on his own recognizance until the revocation hearing (Appellee's Br. p. 7) and Appellant does not argue to the contrary. The motion to revoke probation was filed on February 25, 1997. The revocation hearing was held on March 28, 1997. No substantial time lag existed and Appellant thus suffered no prejudice from the lack of a separate preliminary hearing. We find that Appellant was afforded due process in this case.
We also find that the court satisfied Appellant's due process rights herein. Appellant received the State's written motion to revoke probation indicating with specificity the reasons for which it was requesting revocation. The court notified Appellant in writing of the hearing date on the State's motion. Appellant appeared with counsel at the hearing and Appellant's counsel challenged the credibility of the State's main witness, implying that he made up the story that Appellant was involved with him in stealing the radar detectors. Counsel also challenged the evidence presented against Appellant by calling the owner of the radar detectors who testified that he thought the instruments contained no serial numbers. Thus, Appellant did present evidence attempting to show that he did not violate probation conditions because he was not involved in the alleged crimes. The record demonstrates that counsel chose to focus on this defense, that Appellant was not involved in the crimes, and not on alternatives to revocation.
While the court in the instant case failed to provide a written statement regarding the specific evidence it relied upon and the reasons for revoking probation as required by Gagnon,411 U.S. at 786, (citing Morrissey v. Brewer, 408 U.S. at 489), we find no resulting deprivation of due process to Appellant. We find, as did the Ohio Supreme Court in Delaney, supra that the court's oral statements on the record regarding his findings and reasons for revoking Appellant's probation were sufficient to inform Appellant and to provide a record for review on appeal. See11 Ohio St.3d at 234-235. We must also note that I this issue was not raised on appeal.
Appellant argues that mitigating evidence would have been presented had he known that this hearing was more than a probable cause hearing. However, Appellant knew or should have known that the hearing was more than a probable cause hearing from the notice indicating that hearing would be held on the State's motion to revoke probation. Further, Appellant knew that the hearing was more than a probable cause hearing once the court found sufficient evidence warranting revocation at this hearing and immediately began proceeding into revocation. Counsel could have and should have made a motion to the court or objected to further proceedings if she thought this was only a probable cause hearing. No such attempt was made and when the court asked if she wanted to present anything further, counsel replied, "no". (Tr. p. 50). Further, Appellant does not indicate the mitigating factors that would have been presented to warrant an alternative to revocation. Few factors would mitigate against resentencing Appellant in the instant case since he was conditionally released from his already imposed sentence. The Sixth Circuit Court of Appeals has held that Federal Rules of Criminal Procedure, Rule32, does not confer a right to a defendant to allocute or present mitigating circumstances before "resentencing" at a probation revocation hearing. United States v. Coffey (6th Cir. 1989),871 F.2d 39, 40-41. There is likewise no such right in Ohio law.
For all of the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, the lower court judgment is hereby affirmed.
Cox, P.J., concurs.
Vukovich, J., concurs.
APPROVED:
 _____________________________ CHERYL L. WAITE, JUDGE