OPINION
{¶ 1} Defendant, Darrell Richardson, appeals from a decision of the Montgomery County Common Pleas Court that revoked his community control (probation) and reinstated a previously suspended twelve month prison term.
 {¶ 2} Defendant was indicted on eight counts of non-support of his dependents in violation of R.C. 2919.21(B), which are felonies of the fifth degree. Pursuant to a plea agreement, Defendant pled guilty to counts one through four. In exchange, the State dismissed the remaining four charges. The trial court sentenced Defendant to a twelve month prison term on count one, and five years of community control on counts two, three, and four, to commence after Defendant completed serving his prison sentence on count one.
 {¶ 3} After Defendant completed serving his one year prison term he was immediately transferred to New York authorities and imprisoned there on pending charges. Defendant was released from jail in New York on January 6, 2005, and on January 12, 2005 he returned to Dayton and met with his Montgomery County probation officers regarding the terms and conditions of his probation on counts two, three and four.
 {¶ 4} On May 3, 2005, Defendant's probation officer filed a notice alleging that Defendant had violated conditions three, five, and seven of his community control. A hearing was held on June 6, 2005, following which the trial court found that Defendant had violated his community control. The trial court revoked Defendant's community control on count two and imposed a maximum prison term of twelve months. The court continued Defendant's community control on counts three and four.
 {¶ 5} Defendant timely appealed to this court from the revocation of his community control and the imposition of a twelve month prison term.
 FIRST ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT DENIED THE DEFENDANT A RIGHT TO MINIMUM DUE PROCESS BY REVOKING HIS PROBATION WITHOUT REQUIRING HIS INTERSTATE TRAVEL PROBATION OFFICER TO TESTIFY TO THE ENTRIES SHE HAD MADE, ABSENT A SHOWING OF GOOD CAUSE BY THE PROSECUTION."
 {¶ 7} In Gagnon v. Scarpelli (1973), 411 U.S. 778,93 S.Ct. 1756, 36 L.Ed.2d 656, the United States Supreme Court held that the following minimum due process requirements apply in a probation revocation proceeding: (a) written notice of the claimed violations of probation, (b) disclosure to the probationer of the evidence against him, (c) an opportunity to be heard in person and to present witnesses and documentary evidence, (d) the right to confront and cross-examine adverse witnesses, (e) a neutral and detached hearing body, and (f) a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation. Id., at 786. In Statev. Miller (1975), 42 Ohio St.2d 102, the Ohio Supreme Court considered whether the probationer's right to confront adverse witnesses against him was denied when the trial court permitted a probation officer who did not prepare the entries in the probation department record to testify about the contents of that record. The court held as follows:
 {¶ 8} "Where at a probation revocation hearing the trial court permits a probation officer who did not prepare the entries in the probation department record to testify as to the contents of that record and the probation officer who prepared the entries does not appear, there is a denial of the probationer's right to confront the witnesses against him, and, where the record does not show that the probation officer who prepared the entries was unavailable or that a specific finding was made of good cause for not allowing confrontation, there is a denial of the minimum requirements of due process of law required for probation revocation proceedings." Syllabus.
 {¶ 9} Rule 3 of Defendant's community control provides: "I shall notify my Probation Officer of any change of residence immediately after the change. I shall not leave the State of Ohio without the written permission of the Court or Montgomery County Adult Probation Department." Defendant was found to have violated this rule because he did not return to Ohio or contact his probation officer immediately after his travel permit to New York expired on January 29, 2005. Furthermore, Defendant failed to supply the Adult Probation Department with a valid New York address and phone number. An order to report to his New York probation officer sent to Defendant at the New York address he provided to the Montgomery County Probation Department was returned due to "incomplete address." Rule 5 of Defendant's community control provides: "I shall report at such time and place as directed by my Probation Officer. If my Probation Officer is unavailable, I shall report to the Officer of the Day, the Supervisor, Manager, Assistant Deputy, or Deputy Court Administrator." Defendant was found to have violated this rule because he failed to contact his probation officer immediately after his travel permit to New York expired on January 29, 2005, and Defendant's last contact with the probation department was on February 22, 2005.
 {¶ 10} With respect to the violation of conditions three and five of his community control, Defendant argues that he was denied his due process right to confront adverse witnesses against him during his probation revocation hearing because the sole probation officer who testified, Ms. Badgett, is not the person who prepared the entries in the probation department record pertaining to the interstate transfer of Defendant's probation to New York, and the issuance of Defendant's travel permit to New York. Furthermore, there is no showing in this record that the probation officer who did prepare those entries, Ms. Shock, was unavailable to testify, and no finding by the trial court of good cause for not allowing the confrontation.Miller, supra. Defendant claims that this is critical because the violations of conditions three and five of his community control are the result of a misunderstanding regarding when and how the interstate transfer of his probation to New York would take effect. That misunderstanding was allegedly caused by statements made to Defendant by the interstate probation officer, Ms. Shock, and what she led Defendant to believe. Thus, Defendant claims that Ms. Shock's testimony at his probation revocation hearing was crucial to determining whether he violated these conditions of his probation, as well as an accurate and complete understanding of what Defendant had been told regarding the transfer of his probation to New York.
 {¶ 11} At the outset we note that Defendant failed to object to Ms. Badgett's testimony concerning those portions of the probation department record pertaining to the interstate transfer of Defendant's probation to New York, and the issuance of his travel permit to go to New York. Neither did Defendant object to the admission of documents he signed pertaining to the interstate transfer of his probation (State's Exhibit 4). Those documents are dated January 20, 2005, and they require Defendant "within ten days" to send to the probation department verification of his address and employment, which was not done here. By failing to object to the testimony and documentary evidence relating to the interstate transfer of his probation to New York and his travel permit to go to New York, Defendant has waived all but "plain error" in the admission of that evidence. State v. Wickline
(1990), 50 Ohio St.3d 114. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. State v. Long (1978),53 Ohio St.2d 91.
 {¶ 12} It is impossible to determine from this record how much of the testimony Ms. Badgett gave concerning the interstate transfer of Defendant's probation to New York and his travel permit to go to New York were matters about which Badgett had firsthand knowledge, and how much of it was simply testimony she gave based upon entries made in the probation department record by someone else, i.e. the interstate transfer probation officer, Ms. Shock. What the record does show in that regard is that Ms. Badgett was Defendant's probation officer and as such she had firsthand knowledge about various aspects of his probation, including an awareness that Defendant was working with Ms. Shock and was in the process of getting his probation transferred to New York. The record also shows, however, that Ms. Badgett did not handle any of the interstate transfers, only Ms. Shock did that. Furthermore, Ms. Badgett testified that she had no idea what Ms. Shock may have verbally told Defendant regarding the interstate transfer of his probation.
 {¶ 13} Notwithstanding that the trial court erred in permitting Ms. Badgett to testify concerning those portions of the probation department record pertaining to the interstate transfer of Defendant's probation to New York and the issuance of his travel permit to go to New York because Badgett did not prepare those entries and had no firsthand knowledge about them,Miller, supra, that error does not rise to the level of plain error in this case. In addition to violating conditions three and five of his community control, which Defendant claims was the result of his being misled by statements Ms. Shock made to him regarding the interstate transfer of his probation to New York, the trial court also found that Defendant violated another condition of his community control, rule seven, because Defendant failed to make any payments toward his court-ordered child support obligation of five hundred dollars per month. That violation is based upon records concerning which Badgett has firsthand knowledge, and standing alone is sufficient grounds to support a revocation of Defendant's community control. It is also independent of any issue concerning the interstate transfer of Defendant's probation to New York and anything Ms. Shock may have said to Defendant in that regard.
 {¶ 14} Accordingly, we cannot say that but for the failure of Ms. Shock to testify at the revocation hearing or the admission of that portion of Ms. Badgett's testimony pertaining to the interstate transfer of Defendant's probation to New York and the issuance of his travel permit to go to New York, Defendant's community control would not have been revoked. Plain error has not been demonstrated on this record.
 {¶ 15} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 16} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO THE MAXIMUM SENTENCE OF TWELVE MONTHS."
 {¶ 17} R.C. 2929.14(C) provides that in imposing a sentence for a felony the trial court may impose the longest prison term authorized for offense only upon offenders who commit the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, and upon certain major drug offenders and certain repeat violent offenders. Additionally, R.C. 2929.19.(B)(2)(d) requires the trial court to give its reasons for imposing a maximum sentence.
 {¶ 18} Upon finding that Defendant had violated the conditions of his community control, the trial court revoked Defendant's community control on count two and imposed a twelve month prison term, the maximum prison term available for a felony of the fifth degree. R.C. 2929.14(A)(5). The court justified its maximum sentence on a finding it made pursuant to R.C.2929.14(C), that Defendant posed the greatest likelihood for committing future crimes, that being "the future crime of not supporting your children." The reason the trial court gave for its maximum sentence, in fulfillment of R.C. 2929.19(B)(2)(d), was "because of the opportunities we've given you in the past and the ongoing — just resolute refusal to help your children."
 {¶ 19} Defendant argues that the findings the court made and the reason it gave to justify its maximum sentence are not supported by the record.
 {¶ 20} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that R.C. 2929.14(C) and R.C.2929.19(B)(2) violate a defendant's Sixth Amendment rights perBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403 because those provisions require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict alone or an admission of the defendant. Syllabus. A sentence imposed on a R.C.2929.14(C) finding by the trial court is unconstitutional and must be reversed. Id. Trial courts now have full discretion to impose any sentence within the applicable statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences.Id.; State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855.
 {¶ 21} Defendant filed his notice of appeal on June 14, 2005.Foster was decided on February 27, 2006. Thus, this case was pending on direct review when Foster was decided and therefore reversal and resentencing are required per Foster. Id., at ¶ 104.
 {¶ 22} The second assignment of error is sustained. Defendant's sentence will be reversed and vacated, and the case remanded for resentencing within the applicable range established by R.C. 2929.14(A)(5).
 THIRD ASSIGNMENT OF ERROR {¶ 23} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REVOKED DEFENDANT'S PROBATION FOR VIOLATING CONDITION 7 (FAILURE TO ACCOMPLISH ALL CASE PLAN OBJECTIVES — SPECIFICALLY FAILURE TO PAY CHILD SUPPORT) WITHOUT MAKING ANY INQUIRY INTO THE REASONS FOR DEFENDANT'S FAILURE TO PAY SUPPORT."
 {¶ 24} Defendant argues that the trial court abused its discretion in revoking his probation for failure to make court ordered child support payments without first inquiring into Defendant's reasons for failing to make those payments. We agree.
 {¶ 25} The privilege of probation rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege. State v. Simpson (April 22, 2002), Butler App. No. CA2000-12-251, 2002-Ohio-1909. The right of a defendant to continue on probation is a matter resting within the trial court's sound discretion. State v. Scott (1982),6 Ohio App.3d 39. Nevertheless, a trial court may not properly revoke a defendant's probation for failure to pay a fine or make restitution absent evidence and findings that defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate to meet the State's interest in punishment and deterrence. Bearden v. Georgia (1983),461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221. In other words, a defendant's probation cannot automatically be revoked and Defendant imprisoned solely because he has failed to pay a fine or make restitution. The court must first inquire into the reasons for the failure to pay. Id. In Bearden v. Georgia,supra, the Supreme Court held:
 {¶ 26} "We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment."Id., at 672-673.
 {¶ 27} In State v. Scott, supra, we held:
 {¶ 28} "It is unconstitutionally discriminatory to revoke probation and imprison an indigent probationer for her failure to make restitution payments where the record shows that the only reason for her nonpayment is her inability to pay, and there is no evidence that the probationer willfully or intentionally failed or refused to make such restitution payments or willfully or intentionally failed to obtain employment in order to make the restitution payments." Syllabus.
 {¶ 29} The evidence in this case demonstrates that Defendant was released from jail in New York on January 6, 2005. Thereafter, he traveled to Dayton where he met with his Montgomery County Adult Probation Officers, Ms. Badgett and Ms. Shock, on January 12, 14, and 20, 2005. Defendant returned to New York on January 20, 2005, on a travel permit which by its terms expired on January 29, 2005. Defendant did not immediately return to Dayton or contact his probation officer after his travel permit expired because he believed his probation was being transferred to New York. Defendant was arrested on these probation violations when he returned to Dayton in April 2005.
 {¶ 30} Ms. Badgett testified that from the time Defendant was released from jail in New York on January 6, 2005, until his arrest on these probation violations in April, 2005, he did not make any child support payments. Therefore, Defendant violated rule seven of the conditions of his community control which required Defendant to accomplish all of the case plan objectives set for him, including court ordered monthly child support of five hundred dollars per month. Badgett further testified that when she met with Defendant in January 2005 he did not report that he was employed, and she told him he would need to get employment as soon as possible in order to pay his child support. Defendant agreed to do that. Defendant failed to get a job, however, and remained unemployed. Badgett testified that except for her inability to contact Defendant after he returned to New York on January 20, 2005, and his failure to make monthly child support payments, Defendant complied with all of her other requests.
 {¶ 31} Unlike State v. Simpson, supra, in this case Defendant testified that he did not intentionally violate the conditions of his probation and that he tried to comply with the requests of his probation officers. Defendant acknowledged that he hadn't made any child support payments since being released from jail on January 6, 2005, but Defendant explained that he was unable to acquire a job and didn't have any money to pay after he returned to New York on January 20, 2005, and he did not have the ability to pay child support because he did not have a job.
 {¶ 32} Based upon this evidence the trial court found that Defendant violated condition seven of his community control because he failed to make any payments on his court-ordered child support obligation. We believe that finding to be an abuse of discretion where there was no inquiry by the trial court into Defendant's reasons for failing to pay, and no evidence that Defendant was financially able to make those payments and he willfully or intentionally refused to pay, or that he willfully or intentionally failed to obtain employment or failed to make sufficient bona fide efforts to legally acquire the resources so he could pay. Bearden; Scott.
 {¶ 33} The third assignment of error is sustained. That portion of the trial court's judgment finding Defendant to be in violation of condition seven of his community control will be reversed and this cause remanded for a hearing at which the trial court must inquire into the reasons for Defendant's failure to pay his court ordered child support in accordance with Beardenand Scott.
 FOURTH ASSIGNMENT OF ERROR {¶ 34} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT DEFENDANT HAD VIOLATED CONDITIONS 5 AND 3 OF HIS `GENERAL CONDITIONS OF SUPERVISION.'"
 {¶ 35} In this assignment of error Defendant complains that the evidence presented by the State was not sufficient to demonstrate that he violated rules three and five of his conditions of community control.
 {¶ 36} The State's burden of proof in a probation revocation hearing is to prove by a preponderance of the evidence that Defendant violated a condition of probation. State v. Parker
(March 10, 2003), Stark App. No. 2002-CA0-0273, 2003-Ohio-1148;State v. Stockdale (Sept. 26, 1997), Lake App. No. 96-L-172. The decision whether to revoke probation is a matter resting within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Johnson (May 25, 2001), Montgomery App. No. 17420; State v. Buxton (April 16, 1999), Montgomery App. No. 17279; Parker, supra. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an unreasonable, arbitrary, unconscionable attitude on the part of the trial court. Johnson, supra.
 {¶ 37} Rule 5 of Defendant's general conditions of supervision required Defendant to report at such time and place as directed by his probation officer. Ms. Badgett testified that Defendant was given a travel permit to go to New York that was valid through January 29, 2005. After that date Defendant was to contact the probation department for further instructions. When Defendant's travel permit expired on January 29, 2005, he did not immediately contact the probation department, nor did he return from New York. Defendant did not contact the probation department until February 22, 2005, and even then he did not leave a return phone number where he could be reached. Mail that was sent to Defendant at the New York address Defendant provided to the probation department was returned undelivered due to "incomplete address." The probation department records do not show any attempt by Defendant to contact them after February 22, 2005, until he was arrested in Dayton on these probation violations in April 2005.
 {¶ 38} This evidence, if believed, is clearly sufficient to show, by a preponderance of the evidence, that Defendant violated condition five of his probation. Nevertheless, Defendant argues that condition five of the general conditions of supervision did not apply to him. Defendant bases this contention on the fact that when Ms. Badgett met with him on January 12, 2005, after his release from jail in New York, to go over the conditions of probation with Defendant, she utilized a standard form (State's Exhibit 1) whereupon either she or Defendant "checked off" each condition of probation after she went over it. Every condition of probation listed on that form is checked off except number five. Defendant therefore argues that clearly then that specific condition was not intended to become a part of his conditions of probation, and he was under no obligation to abide by it.
 {¶ 39} We are not persuaded. Defendant's argument conveniently overlooks the fact that at the time of Defendant's original sentencing in December 2003, before he began serving his one year sentence for failure to support his dependents and was thereafter transferred to a jail in New York because of pending charges there, a probation officer other than Ms. Badgett initially went over Defendant's conditions of probation with him using the same standardized form Ms. Badgett later used (State's Exhibit 3). Every condition of probation listed on that form, including number five, has Defendant's initials beside it. Furthermore, Defendant signed that form, agreeing to abide by those conditions of probation. Thus, it is clear that all of the conditions of probation listed on that form, including number five, were intended to apply to Defendant and he was obligated to abide by them. We further note that Defendant did not make this same argument during his probation revocation hearing that condition five did not apply to him. The trial court did not abuse its discretion in finding that Defendant had violated condition five of his probation as that finding is supported by sufficient evidence.
 {¶ 40} Rule 3 of Defendant's general conditions of supervision required Defendant to notify his probation officer of any change of residence immediately after the change, and not leave the State of Ohio without the written permission of the court or the probation department. The evidence presented demonstrates that although Defendant was issued a travel permit to go to New York, that permit had an expiration date, listed as "Returning Date," of January 29, 2005. After that date Defendant was to call the probation department for further instructions. Ms. Badgett testified that Defendant did not immediately contact the probation department after his travel permit expired on January 29, 2005. In fact, Defendant did not call the probation department until February 22, 2005, and even then he did not leave a return phone number. Neither did Defendant return from New York. Furthermore, Defendant did not leave a valid address where he could be contacted and mail sent to Defendant at the New York address he provided was returned undelivered due to "incomplete address."
 {¶ 41} Clearly this evidence, if believed, is sufficient to demonstrate that Defendant violated condition three of his probation. Nothing even approaching an abuse of the trial court's discretion has been demonstrated, notwithstanding Defendant's testimony that it wasn't clear to him that he had to abide by the conditions of his probation and the interstate transfer papers and travel permit that he signed because he thought his probation was being transferred to New York based upon what Ms. Shock, the interstate transfer probation officer, told him.
 {¶ 42} The fourth assignment of error is overruled.
 {¶ 43} Having sustained Defendant's second and third assignments of error, that portion of the trial court's judgment finding that Defendant violated rule seven of the conditions of his community control will be reversed, as will the trial court's imposition of a twelve month prison sentence, and this case will be remanded to the trial court for further proceedings consistent with this opinion.
Wolff, J. and Fain, J., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).