OPINION
{¶ 1} Defendant-appellant Betty Williams appeals from a judgment of the trial court revoking her community control and sentencing her to seven months incarceration on each of seven counts and ordering that the sentences run consecutively, for a total of forty-nine months in prison. *Page 2 
 {¶ 2} Williams contends that the trial court erred by revoking community control without first establishing that she willfully and intentionally failed to pay restitution. Williams further contends that the imposition of a further prison term was an abuse of discretion caused by the trial court's dissatisfaction with the result of the original sentence.
 {¶ 3} We conclude that the trial court erred in revoking community control without inquiring into Williams's ability to pay restitution. Because this conclusion disposes of this appeal, we need not address the second assignment of error. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 4} In September 2002, Betty Williams was indicted on four counts of Theft and five counts of Forgery, all of which were fifth-degree felonies. Williams filed a petition to enter a plea of guilty, and the court then found Williams guilty on all charges in January 2003. After a pre-sentence investigation, the court sentenced Williams in February 2003 to a definite term of eleven months each on two of the Theft charges (counts one and two), with the terms to be served consecutively, for a total of twenty-two months in prison. The court also sentenced Williams to five years community control on the remaining seven counts. In the sentencing entry, and also at the sentencing hearing, the court indicated that violations of community control could result in a longer or more restrictive sanction, up to and including a prison term of nine months on each count to be served consecutively for a total sentence of sixty-three months. Community *Page 3 
control was to begin when Williams was released from prison. As part of community control, Williams was ordered to pay restitution to the victim in the amount of $190,000. An offender payment agreement was filed in February 2003, indicating that Williams would pay a total of $3,010 per month for supervision fees, court costs, and restitution.
 {¶ 5} Williams was transported to the Ohio Reformatory for Women in March 2003, where she entered and completed an Intensive Prison Program that resulted in her release from prison after serving four months of the twenty-two month sentence. From February 2004, through September 2004, Williams made regular monthly payments of $200 for restitution. In October 2004, an order was entered modifying the monthly payment from $3,010 to $200, to allow Williams to make affordable monthly payments.
 {¶ 6} From October 2004 though November 2005, Williams made the $200 monthly payments as ordered. She missed the December 2005 payment, made payments of $200 in January, February, March, May, and July 2006, and in January 2007. In January 2007, the State filed a motion for violation of community control and asked the court to set the matter for a hearing. The State noted that Williams had failed to pay restitution in August through December 2006.
 {¶ 7} The court set a probable cause hearing for February 7, 2007, and upon finding probable cause, set the matter for an evidentiary hearing in March 2007. At the hearing, the following exchange occurred:
 {¶ 8} "THE COURT: We are here today for an evidentiary hearing based upon a Motion and Affidavit that was previously filed in this Court alleging the Defendant had violated the community control terms previously granted to her. We are here today to *Page 4 
conclude this matter.
 {¶ 9} "I will ask Counsel at this time, how do you wish to proceed?
 {¶ 10} "MS. HINDS-GLICK: We would just like to enter into the record, Your Honor, that Ms. Williams did miss several payments and she readily admits that. There were some problems at that time. I believe it was August through December where she had experienced a death in her family and a temporary separation from her husband where she was handling all of her household bills on her own and did get behind in her rent.
 {¶ 11} "Over the past month she has made a great effort to pay that back and get it caught up, bringing in 11 of the $1,600 that she was behind. She is willing to commit to upped restitution payments in order to get this caught up and even continue on that higher payment plan if that would be made available to her.
 {¶ 12} "THE COURT: All right. Do you wish to admit the allegations in the motion or do you wish the State to present evidence that would ask the Court to make that determination?
 {¶ 13} "MS HINDS-GLICK: No, she's willing to admit that she did miss the restitution payments.
 {¶ 14} "THE COURT: Ms. Williams, is it your desire, based on what your Counsel has indicated to the Court, to admit to the community control violations in this case or do you wish to have a hearing?
 {¶ 15} "THE DEFENDANT: I will agree with my counsel.
 {¶ 16} "THE COURT: I'm sorry?
 {¶ 17} "THE DEFENDANT: I agree with my counsel. *Page 5 
 {¶ 18} "THE COURT: All right. In that case, the Court will find that there is substantial evidence that the Defendant has violated the community control granted to her in this case as alleged in the Motion and Affidavit. As such, the Court is prepared to proceed forward with disposition." Transcript of March 9, 2007 Proceedings, pp. 2-4.
 {¶ 19} Immediately following this dialogue, the court asked the State if it wished to present any information. The State requested that the victim be allowed to speak. The victim reiterated that in addition to the amount of money that had been taken, his business's reputation had been harmed. He also expressed dismay that Williams had been released from prison after serving only four months. After offering Williams and her counsel an opportunity to speak, the court made the following comments:
 {¶ 20} "Now when you originally came before this Court, there was an understanding and expectation that you would be serving in excess of 20 months in prison before you would be released. And because of circumstances unfortunately which were beyond the control of this Court, you were released early. I say unfortunately because that was not this Court's plan, to release you from prison early because this Court's expectation and opinion was that you would be serving this sentence in the form of punishment for the conduct you committed.
 {¶ 21} "And despite any efforts from this Court, I was able to determine that there was nothing this Court could do regarding that particular sentence that was cut short, and you failed to satisfy the expectation this Court had in this particular manner.
 {¶ 22} "Nevertheless, from your perspective that had to be considered an opportunity.
 {¶ 23} ". . . . *Page 6 
 {¶ 24} "Despite the fact you were released early, I guess one could say that provided the opportunity for you to begin your restitution in an earlier fashion and apparently that began.
 {¶ 25} ". . . .
 {¶ 26} "THE COURT: There was a point in time in here where restitution was not paid at all. I understand the record does reflect that when the State realized that that had occurred and they brought the matter to the Court's attention . . . you made efforts to catch that up.
 {¶ 27} "THE DEFENDANT; Yes.
 {¶ 28} "THE COURT: And caught it up significantly, but you are currently, at this time, still remaining in arrears. That arrears is a function of your failure during that eight-month period to make those payments on a monthly basis as required.
 {¶ 29} "The Court can only draw one conclusion from that failure to pay and that is somehow the break, and that's the only word I can use to say what the State did in this case, . . . the break to let you out early from prison somehow did not stick to you, and I've been in this business long enough to understand that a victim is victimized the first time that they are in the hands of an offender who causes them to lose their money, but they're victimized, and particularly impacted, by the failure of the person to do what they were supposed to do on community control and pay those restitution payments. And I couldn't find, in light of this particular case, any justification which would satisfy this Court for your failure to do so." Id. at 6-9.
 {¶ 30} After making the above comments, the court imposed a prison term of seven months for each of the seven counts on which community control had previously *Page 7 
been imposed and ordered the terms served consecutively, for a total sentence of forty-nine months. Williams was then immediately taken into custody and transported to prison.
 {¶ 31} Williams appeals from the judgment revoking community control and the sentence imposed by the court.
 II {¶ 32} Williams's First Assignment of Error is as follows:
 {¶ 33} "THE TRIAL COURT ERRED WHEN IT REVOKED DEFENDANT'S COMMUNITY CONTROL FOR FAILURE TO PAY RESTITUTION WITHOUT FIRST ESTABLISHING THAT SHE WILLFULLY AND INTENTIONALLY FAILED TO PAY AND NO OTHER VIOLATIONS OF HER COMMUNITY CONTROL WERE ASSERTED."
 {¶ 34} Under this assignment of error, Williams contends that indigent probationers cannot be imprisoned for failure to make restitution payments where the record indicates that the only reason for non-payment is inability to pay. William further contends that the trial court erred by failing to inquire into her ability to pay restitution during the period of violation.
 {¶ 35} "The right of the defendant to continue on probation rests within the sound discretion of the court." State v. Scott (1982),6 Ohio App.3d 39, 41, 452 N.E.2d 517. Therefore, we review the trial court's decision for abuse of discretion, which "means more than a mere error of law or an error in judgment. It implies an unreasonable, arbitrary, unconscionable attitude on the part of the trial court." State v.Richardson, Montgomery App. No. 21113, 2006-Ohio-4015, at ¶ 36. A decision is unreasonable and, *Page 8 
therefore, an abuse of discretion if no sound reasoning process supports the decision. State v. Picklesimer, Greene App. No. 06-CA-118,2007-Ohio-5758, at ¶ 28, citing AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161,553 N.E.2d 597.
 {¶ 36} Applying this standard, we conclude that the trial court's decision was not supported by a sound reasoning process. In Bearden v.Georgia (1983), 461 U.S. 660, 672-673, 103 S.Ct. 2064, 2073,76 L.Ed.2d 221, the United States Supreme Court held that:
 {¶ 37} "[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine."
 {¶ 38} We have applied this rule on a number of occasions. See,e.g., State v. Richardson, Montgomery App. No. 21113, 2006-Ohio-4015, at ¶ 25 (reversing due to trial court's failure to inquire into reasons why defendant did not pay child support); and Scott, 6 Ohio App.3d at 42
(holding that trial court abused its discretion in revoking *Page 9 
probation in absence of testimony that probationer could meet restitution payments).
 {¶ 39} In contending that the trial court correctly imposed a prison term, the State relies on State v. Simpson, Butler App. No. CA2000-12-251, 2002-Ohio-1909, 2002 WL 649352. In Simpson, the Twelfth District Court of Appeals found that a probationer's unequivocal admission of a probation violation, along with his failure to assert an inability to pay at either of two hearings, constituted evidence that his failure to pay was willful. 2002 WL 649352, at * 3. The Twelfth District, therefore, distinguished Bearden and concluded that the record supported a finding that the probationer had "`willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay'" Id. The State contends that Williams similarly admitted to a violation and failed to assert her inability to pay. We disagree.
 {¶ 40} In the first place, the Twelfth District's distinction ofBearden was based on the defendant's failure to either assert or present evidence of inability to pay. In this regard, the Twelfth District stated that:
 {¶ 41} "We find this case distinguishable from Bearden. In this case, appellant admitted to violating rule twelve of his probation conditions. Appellant, who was represented by counsel, did not present any evidencenor did he assert, either at the probation revocation hearing in October 2000 or the disposition hearing in November 2000, that he did notpossess the ability to pay the fines and restitution." Id. (Emphasis added.)
 {¶ 42} In contrast to the defendant in Simpson, Williams did advance reasons for her failure to pay restitution. On its face, the record indicates that Williams made consistent and regular payments for two years after her release from prison, but then *Page 10 
suffered financial difficulties, including a family death and a temporary separation from her husband, which caused her to miss some payments. Rather than conducting an inquiry into these matters, the trial court stated that it could "only draw one conclusion" from the failure to pay, which was that the "break" to let Williams out early from prison "did not stick." However, Williams, through her attorney, proffered an explanation for her failure to pay restitution that would support a different conclusion, and the court should have conducted an inquiry into the reasons for non-payment. As we stressed in State v.Walden (1988), 54 Ohio App.3d 160, 162, 561 N.E.2d 995, "a sentencing court must inquire into (and consider) the reasons for the failure to pay restitution before it can revoke probation based on that failure." (Emphasis added.) Here, the trial court, having been proffered reasons for the failure to pay restitution, conducted no inquiry, but treated the proffered reasons as immaterial.
 {¶ 43} Accordingly, Williams's First Assignment of Error is sustained.
 III {¶ 44} Williams's Second Assignment of Error is as follows:
 {¶ 45} "THE TRIAL COURT EXERCISED ABUSE OF DISCRETION IN IMPOSING A FURTHER PRISON TERM DUE TO THE TRIAL COURT'S DISSATISFACTION WITH THE ORIGINAL SENTENCING."
 {¶ 46} Under this assignment of error, Williams contends that the trial court was improperly motivated by its frustration at Williams's early release from prison and a desire to see punishment carried out as the court had originally intended. We decline to address this assignment of error, as it is moot. *Page 11 
 IV {¶ 47} Williams's First Assignment of Error having been sustained, and Williams's Second Assignment of Error having been overruled as moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 WOLFF, P.J., and GRADY, J., concur. *Page 1