OPINION
{¶ 1} Defendant-appellant Mindy Picklesimer appeals from an order of the trial court revoking community control sanctions and imposing a sentence of three years of incarceration. She contends that the trial court erred in finding violations of her community control sanctions based upon her failure to pay restitution and her failure to *Page 2 
complete chemical dependency treatment. Picklesimer further contends that the trial court abused its discretion by revoking her community control sanction and imposing a three-year sentence, in view of her evidence in mitigation. Finally, Picklesimer contends that the trial court erred by sustaining an objection that precluded her from testifying concerning what her probation officer told her.
 {¶ 2} We conclude that the trial court could properly predicate its finding of violations or Picklesimer's community control sanctions upon her admission of those violations, and that the trial court did not abuse its discretion in deciding to revoke Picklesimer's community control sanctions and impose a three-year sentence of incarceration. Finally, we conclude that Picklesimer failed to preserve any error in the exclusion of evidence concerning what she was told by her probation officer when she failed to proffer what that evidence would have shown. Accordingly, the order of the trial court revoking Picklesimer's community control sanctions and imposing a sentence of incarceration is Affirmed.
 I {¶ 3} In February, 2005, Picklesimer pled guilty to 40 felony counts involving theft and forgery offenses. She was sentenced to five years of community control sanctions and ordered to pay $18,000 in restitution. She was informed that in the event her community control sanctions should be revoked, she would be sentenced to imprisonment for 40 years. At this hearing, Picklesimer informed the court that she could reasonably pay $100 per month toward restitution.
 {¶ 4} In May, 2005, a revocation hearing was held. The trial court found that *Page 3 
Picklesimer had violated the terms of her community control sanctions by using cocaine and by failing to make restitution payments. The trial court nevertheless continued Picklesimer on community control sanctions, but with the following two new, additional conditions: "I will successfully complete the Monday Community Based Correctional Facility Program and follow any and all treatment recommendations made"; and "I will enroll in the appropriate substance abuse aftercare and follow any and all treatment recommendations made. I will not terminate nor cause my treatment to be terminated without the prior approval of the Adult Probation Department."
 {¶ 5} In July, 2006, a new motion to revoke Picklesimer's community control sanctions was filed, alleging four violations of general conditions: (1) changing addresses without prior approval from Picklesimer's probation officer; (2) failing to report since June 26, 2006; (3) failing to make regular monthly restitution payments, with the last payment having been on January 30, 2006; and (4) terminating Picklesimer's chemical dependency treatment without prior approval from her probation officer. At the hearing on this motion, an agreement between Picklesimer and the State was made of record whereby Picklesimer admitted the third and fourth alleged violations, the State dismissed the alleged first and second violations, and the State agreed that it would be satisfied if Picklesimer's community control sanctions would be revoked and she would be sentenced to incarceration for three years. The State agreed that it would not seek imposition of the forty-year sentence that the trial court had previously announced it would impose in the event that community control sanctions were revoked.
 {¶ 6} The trial court accepted Picklesimer's admission to the third and fourth alleged violations of the conditions of her community control sanctions, and the first and *Page 4 
second alleged violations were dismissed. Based upon Picklesimer's admissions, the trial court found that Picklesimer had violated the conditions of her community control sanctions. Picklesimer's trial counsel then offered to present mitigating evidence relevant to disposition, and mitigating evidence, in the form of Picklesimer's sworn testimony, was presented.
 {¶ 7} At the conclusion of the hearing, the trial court revoked Picklesimer's community control sanctions, and imposed a sentence aggregating three years imprisonment. From this order, Picklesimer appeals.
 II {¶ 8} Picklesimer's First and Third assignments of error are as follows:
 {¶ 9} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REVOKED THE DEFENDANT'S PROBATION [sic] FOR FAILURE TO MAKE RESTITUTION WHEN THE ONLY EVIDENCE PRESENTED CLEARLY ESTABLISHED THAT THE DEFENDANT WAS UNABLE TO MAKE SAID RESTITUTION.
 {¶ 10} "THE FACT THAT THE DEFENDANT DID NOT CONTINUE TO ATTEND `KADIS' (VIOLATION #17) IS A PRETEXT VIOLATION TO FOSTER AND SUPPORT THE GOVERNMENT'S ILLEGAL SENTENCE OF IMPOSING PRISON ON THE POOR, WHEN THEY DO NOT HAVE THE ABILITY TO PAY LARGE SUMS OF MONEY TO THE COURT'S PROBATION DEPARTMENT."
 {¶ 11} Stripped of rhetorical flourishes, these two assignments of error appear to raise, with respect to both the alleged failure-to-pay-restitution and failure-to-complete-chemical-dependency-aftercare-treatment violations, both that there was insufficient *Page 5 
evidence to support the trial court's findings of violations, and that it was an abuse of discretion for the trial court to have revoked community control sanctions and imposed a three-year prison term, because Picklesimer's impoverished condition prevented her from complying with either condition.
 {¶ 12} On the issue of the sufficiency of the evidence to support the findings of violations, Picklesimer presented no evidence until after the trial court had accepted her admission as to these violations, as part of an agreement with the State, and had found the violations, based upon Picklesimer's admissions. After appropriate recitations by the parties, the trial court made the following statement on the record:
 {¶ 13} "THE COURT: Okay. The Court will accept the State's withdrawal of the allegations and of General Conditions 6 and 11. The Court will find that there is substantial evidence that the Defendant has, in fact, violated Conditions 16 and 17 as alleged in the motion and affidavit and will make that finding beyond reasonable doubt.
 {¶ 14} "I guess at this time I'm prepared to proceed forward to disposition. Is there any reason why we should not proceed forward to disposition at this time?
 {¶ 15} "MR. HAYES: No reason from the State, Your Honor.
 {¶ 16} "MR. DALY [representing Picklesimer]: No reason, but I would like to have mitigation heard."
 {¶ 17} It was only after the trial court had found the violations, based upon Picklesimer's admission of them, that Picklesimer offered evidence, in the form of her testimony, not in defense, but in mitigation. Because the trial court predicated its finding of violations upon Picklesimer's admission of those violations, evidence of those violations was not required, and the trial court did not err by finding the violations. *Page 6 
 {¶ 18} Picklesimer testified, in mitigation, that she was living with her two young children, aged five and seven, with their grandmother, in Dayton, but that she, Picklesimer, did not have custody of the children. Picklesimer was not expected to pay rent or "other payments," but was expected to "take care of their needs," presumably referring to the needs of the children. Picklesimer testified that she was employed at a restaurant at a Holiday Inn, for from 20 to 36 hours a week, and made $2.13 an hour plus tips.
 {¶ 19} Picklesimer testified that she had no financial resources, other than her wages and tips, from which to pay restitution, that she had difficulty finding someone to look after her children when she went to the chemical dependency aftercare classes, and that she did not have the money to pay for these classes, which she was required to do because she did not have custody of her children.
 {¶ 20} At the conclusion of the hearing, the trial court addressed the mitigation issue:
 {¶ 21} "I am not unmindful of your financial circumstances, but I am mindful of several other things. I have several hundred people on community control who owe fines, Court costs and restitution. These individuals work extraordinarily hard to comply with all the difficult terms of community control that they are required to follow with great sacrifice to them in many, many areas, but they do so for two reasons. One, because it's the right thing to do, and, secondly, because they know if they fail to do so, there are consequences that will arise from that.
 {¶ 22} "In your case, I told you at sentencing if you violate these conditions you would receive 40 years in prison. *Page 7 
 {¶ 23} "Now, to some extent I would like to think that kind of statement to someone would say, you know, I think I'd better comply with this Court's requirements, particularly after you've had one bite of the apple for a violation and the Court keeps you on.
 {¶ 24} "I owe it to every single person that works two and three jobs to pay their restitution with great sacrifice to them and everyone who works very hard to deliver a clear and sound message that when you comply with the Court's order, you receive community control. When you do not comply with the Court's order you go to prison, and that's where we are.
 {¶ 25} "And based upon what I've said, it's the Court's opinion that you should go to prison. I don't think that probation is a good fit for you, number one, and, number two, despite what you said, I do not believe that you are going to make any payments in the future. I don't believe you're going to follow this Court's orders. Frankly, your history is abysmal.
 {¶ 26} "And I have found very little mitigation why you can't do that. You've been making choices. Maybe you have character flaws, but you make choices as to what you pay, and the question I ask you, you don't even have a legal obligation for your two children, yet you're willing to pay for them, and I'm not discounting that, but if I had 40 years over my head, I would at least make sure my Probation Officer was aware very significantly and every day of my needs and what you could do to make sure you were straight. I think you do what you want to do."
 {¶ 27} After finding a violation of community control sanction conditions, a trial court is vested with substantial discretion in fashioning an appropriate disposition. In *Page 8 State v. Woods (1982), 7 Ohio App.3d 81, it was held to be within the discretion of the trial court to revoke probation based upon a failure to make restitution, and we see no reason for a different result where the issue is the revocation of community control sanctions.
 {¶ 28} "A decision is unreasonable [and therefore an abuse of discretion] if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." AAAA Enterprises, Inc. v. RiverPlace Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157,161.
 {¶ 29} In the case before us, the trial court concluded that Picklesimer could, and should, have made more of an effort to pay restitution during the time she was on community control sanctions, and that she could, and should, have followed through on her chemical dependency aftercare classes. The trial court reached this conclusion after having previously been lenient in continuing Picklesimer on community control sanctions despite previous violations involving cocaine usage and failure to make restitution payments. We cannot say that the trial court employed an unsound reasoning process in coming to this conclusion. We find no abuse of discretion.
 {¶ 30} Picklesimer's First and Third assignments of error are overruled.
 III {¶ 31} Picklesimer's Second Assignment of Error is as follows:
 {¶ 32} "WITH REGARD TO PROBATION [sic] REVOCATION, A DEFENDANT *Page 9 
SHOULD BE GIVEN AN OPPORTUNITY TO CONFRONT THOSE WHO BRING CHARGES AGAINST HER REGARDING THE REASONS REVOCATION IS SOUGHT."
 {¶ 33} Although this assignment of error is framed in terms of a violation of the confrontation clauses of the United States and Ohio constitutions, we conclude that the alleged error does not actually involve any confrontation clause issue. The alleged error occurred when the trial court sustained an objection to a question Picklesimer's trial counsel put to her, during the mitigation hearing, on direct examination:
 {¶ 34} "Q. Okay. Who was your Probation Officer at the time?
 {¶ 35} "A. Mr. Johnson.
 {¶ 36} "Q. Okay. And did Mr. Johnson ask you whether or not you were making payments [of restitution]?
 {¶ 37} "A. Sometimes.
 {¶ 38} "Q. Okay. And what did you tell him?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. Okay. And did he ask how much?
 {¶ 41} "A. No, sir.
 {¶ 42} "Q. Did he say you're not making enough?
 {¶ 43} "A. Yes, sir.
 {¶ 44} "Q. Okay. And when you had the conversation with him and he said you're not making enough, what did you say in response and what was his response?
 {¶ 45} "A. When he would ask me why I haven't made, you know, the right amount of money, I would tell him that I didn't make enough that week or I had to pay a bill or take care of my kids. *Page 10 
 {¶ 46} "Q. Okay. And what was his response?
 {¶ 47} "MR. HAYES: Your Honor, I object, hearsay.
 {¶ 48} "THE COURT: Hang on a second.
 {¶ 49} "MR. DALY: It's actually the accuser we're confronting. He's the one who signed the affidavit against Ms. Picklesimer.
 {¶ 50} "THE COURT: I'm not aware of any exception. She can say what she does in response to this conversation, but not what was said necessarily."
 {¶ 51} At the mitigation hearing, the State did not offer the testimony of Mr. Johnson, the probation officer, so there is no confrontation clause issue. There is a potential issue whether the trial court made a correct ruling on the State's hearsay objection.
 {¶ 52} Whether the statement by Johnson that Picklesimer's attorney was attempting to elicit from her was hearsay depends upon what it was offered to prove. It may have been offered to prove Picklesimer's state of mind, by showing that Johnson, her probation officer, did not appear to consider her failure to make restitution payments as serious, in view of her financial condition. The significance in this event would not be whether what Johnson said was true, but simply that he said it, because this would affect Picklesimer's state of mind, and therefore be relevant to the mitigation issue.
 {¶ 53} The problem is that we are left to speculate what the statement by Johnson that Picklesimer's counsel was attempting to elicit was intended to prove, because no proffer was made of the testimony that Picklesimer would have given on this subject, had the State's objection not been sustained.
 {¶ 54} "Error may not be predicated upon a ruling which admits or excluded *Page 11 
evidence unless a substantial right of the party is affected, and
 {¶ 55} "(1) Objection. . . . .
 {¶ 56} "(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination." Evid. R. 103.
 {¶ 57} In this case, we can only speculate concerning what Picklesimer would have testified that Johnson said to her. The line of questioning is not at all clear. At one point it seems that the "making enough" refers back to the making of payments of restitution. Later, it seems that Picklesimer is talking about how much money she is making. We conclude that this is not a case where the substance of the evidence excluded is apparent from the context within which questions were asked, partly because the context itself is not clear, but also because we still have no idea what Picklesimer would have testified that Johnson said to her. If, for example, Picklesimer would have testified that Johnson told her, "my records indicate that you're not making enough money to pay restitution," then the State's hearsay objection would have been interposed correctly, because this statement would have been offered not merely to prove that it was made, but to prove the truth of the assertion in the statement.
 {¶ 58} The State notes that the Rules of Evidence do not apply in probation revocation proceedings, by virtue of Evid. R. 101(C)(3), and therefore presumably do not apply in community control revocation proceedings. If the Rules of Evidence do not apply, then the decision whether hearsay evidence is sufficiently trustworthy to be worth considering would seem to lie within the sound discretion of the trial court. Regardless *Page 12 
of the effect this may have upon the merits of the State's hearsay objection, however, we consider the requirement of a proffer set forth in Evid. R. 103 to be a codification, in the context of evidentiary rulings, of the common law principle that an appellant must demonstrate that any error occurring during the course of trial was sufficiently prejudicial to merit reversal. Even in the absence of Evid. R. 103, therefore, a party aggrieved by a ruling excluding evidence must preserve the error by making of record the prejudicial effect of the ruling, at least where the prejudicial effect of the ruling is not already apparent from the record.
 {¶ 59} Picklesimer's Second Assignment of Error is overruled.
 IV {¶ 60} All of Picklesimer's assignments of error having been overruled, the order of the trial court from which this appeal is taken is Affirmed.
 WOLFF, P.J., and BROGAN, J., concur. *Page 1