[Cite as *State v. Rudin*, 2012-Ohio-2643.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110747 |
| | | TRIAL NO. B-0701033 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| KARL RUDIN, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 15, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

Per Curiam.

{¶1}  Defendant-appellant Karl Rudin appeals the judgment of the Hamilton County Court of Common Pleas revoking his community control and sentencing him to eight years in prison, after the trial court determined that Rudin had failed to pay restitution to the victim in accordance with the community-control sanctions imposed on his theft conviction.  Because we determine that the trial court failed to make findings as to the reasons for Rudin's failure to pay, which then led to his community-control violation, we reverse the trial court's judgment and remand the case to the trial court to make appropriate findings.

{¶2}  Rudin was indicted for theft from an elderly or disabled adult under R.C. 2913.02(A)(1) for stealing $27,000 in cash from a 71-year-old bar owner, according to the bill of particulars.  Rudin entered into a plea agreement with the state whereby Rudin agreed to plead guilty to the offense as charged with a recommended sentence of five years of community control, which would include paying restitution to the victim in the amount of $27,000 and participating in drug and alcohol treatment as recommended by the probation department.  At the time of the offense, Rudin had been unemployed and struggling with ongoing drug and alcohol issues.  The recommended sentence included eight years in prison if Rudin violated his community-control sanctions.

{¶3}  The trial court accepted Rudin's guilty plea and found Rudin guilty of theft.  The trial court sentenced Rudin to five years of community control and specifically ordered Rudin to make restitution to the victim in the amount of $27,000, payable through the probation department in equal consecutive monthly payments over the five-year period of community control.

{¶4}   Rudin had just less than one year remaining on community control when his probation officer filed a violation with the trial court.  The officer alleged that Rudin had failed to make consecutive monthly payments toward his restitution, and that Rudin still owed $20,530.  Rudin pleaded no contest to the community-control violation.  At the revocation hearing, the trial court indicated that an off-the-record discussion had taken place between the parties, and that the parties had agreed to continue the matter for 60 days to allow Rudin an opportunity make sufficient payments.  Rudin stated at the hearing that he had been employed for the past three years, and that he had "been at Cincinnati State" to enable him to get a better job.  The trial court then instructed Rudin to make restitution "a priority" and continued the matter for 60 days.

{¶5}   At the second hearing, counsel for Rudin stated that Rudin had left his previous job since the first hearing and had obtained a higher paying job making $110 a day.  Rudin also had paid $1,600 toward the restitution obligation since the first hearing.  The trial court granted an additional 60-day continuance, at Rudin's request, and the trial court stressed to Rudin that his income should go toward paying restitution.

{¶6}   At the third hearing, Rudin told the trial court that he had been "let go" from his previous job because his employer had discovered his felony theft.  He had found another job at a party store, and he was continuing to look for a second job.  Rudin requested that the trial court allow him additional time to try to obtain a loan.  Rudin also stated that he would be willing to enter into a separate agreement with the victim to pay the remaining restitution.  The trial court, however, at the request

3

of the prosecutor, revoked Rudin's community control and sentenced him to eight years in prison, as provided in the plea agreement.

{¶7}   In his sole assignment of error on appeal, Rudin asserts that the trial court erred in revoking his community control and imposing an eight-year prison term.

{¶8}   A sentencing court has discretion in deciding whether to revoke community control once a community-control violation has occurred.   R.C. 2929.15(B)(1).   Generally, that decision will not be reversed on appeal absent an abuse of discretion.  *State v. Dockery*, 187 Ohio App.3d 798, 2010-Ohio-2365, 933 N.E.2d 1155, ¶ 13 (1st Dist).   If a sentencing court revokes community control solely for nonpayment of financial obligations imposed as part of that community control, however, then the Fourteenth Amendment to the United States Constitution is implicated as provided in *Bearden v. Georgia*, 461 U.S. 660, 672-73, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).   And we review the constitutionality of the revocation de novo.  *See State v. Castellini*, 1st Dist. Nos. C-110445 and C-110446, 2012-Ohio-1603, ¶ 12, citing *State v. Ziepfel*, 107 Ohio App.3d 646, 652, 669 N.E.2d 299 (1st Dist.1995).

{¶9}   In *Bearden*, the United States Supreme Court held that a sentencing court in a probation revocation proceeding must, consistent with the fundamental fairness required by the Fourteenth Amendment, inquire into the reason for a defendant's failure to pay a financial obligation.  *Bearden* at 672.  If the defendant "willfully refused" or "failed to make sufficient bona fide efforts legally to acquire the resources to pay," then the sentencing court may revoke probation and imprison the defendant.  *Id.*  But, if the defendant "could not pay despite sufficient bona fide

4

efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment." *Id.* The sentencing court can then imprison a defendant who has made sufficient bona fide efforts to pay, but "[o]nly if alternative measures [of punishment] are not adequate to meet the State's interests in punishment and deterrence." *Id.*

{¶10} This court applied *Bearden* in *State v. Dockery*. In *Dockery*, this court stated that in order "to revoke a defendant's community control simply for the nonpayment of court costs and fees, the defendant's 'failure must have been willful and not the result of indigence.' " *Dockery* at ¶ 14, quoting *State v. Douthard*, 1st Dist. Nos. C-000354 and C-000355, 2001 Ohio App. LEXIS 2895 (June 29, 2001). The *Dockery* court then determined that the sentencing court had not had sufficient evidence before it to make the necessary findings under *Bearden* and thus remanded the case to the sentencing court for an evidentiary hearing. *Id.* at ¶ 17.

{¶11} In this case, the record does not reflect that the trial court made the necessary inquiry under *Bearden* regarding the reasons for Rudin's failure to pay. The record is silent as to why Rudin had failed to make restitution payments in the four years prior to the initial community-control violation. The record contains no information regarding Rudin's level of income or his financial obligations during this four-year period. The state argues that the record supports a finding that Rudin's failure to pay was willful. The state points out that Rudin had been attending college classes at Cincinnati State and that the trial court felt Rudin needed to make restitution a priority. These statements standing alone do not lead to the conclusion that Rudin willfully failed to pay the restitution or that he did not make sufficient bona fide efforts to pay.

5

{¶12} In fact, the record demonstrates that Rudin made some bona fide efforts to pay toward the restitution obligation after the initial revocation hearing. In the 60 days after Rudin's first revocation hearing, he had obtained a higher-paying job and had been able to pay $1,600 toward the restitution. By the third revocation hearing, Rudin had lost his job when his employer had discovered his felony theft, and although he had obtained another job, he had not paid toward the restitution. The trial court then sentenced Rudin to eight years in prison at the request of the state, in accordance with the plea agreement. Thus, because the record shows that Rudin made some bona fide efforts to pay his restitution obligation after the initial revocation hearing, and because the record does not contain evidence as to the reasons for Rudin's failure to pay prior to the initial revocation hearing as required by *Bearden*, we determine that the trial court erred in revoking Rudin's community-control and imprisoning Rudin.

{¶13} In conclusion, we sustain Rudin's assignment of error. We reverse the judgment of the trial court and remand the case for findings as to whether Rudin's failure to pay was willful or whether alternative measures of punishment would be inadequate to meet the state's interest.

Judgment reversed and cause remanded.

HILDEBRANDT, P.J., CUNNINGHAM and FISCHER, JJ.

Please note:
The court has recorded its own entry on the date of the release of this opinion.