[Cite as *State v. Burgette*, 2014-Ohio-3483.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 13CA50 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| DUSTIN BURGETTE, | : | |
| Defendant-Appellant. | : | **RELEASED:  8/8/2014** |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Katherine R. Ross-Kinzie, Ohio Assistant Public Defender, Columbus, Ohio, for appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Matthew M. Ward, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for appellee.

HARSHA, J.

{¶1}    After convicting Dustin Burgette of two thefts, the court sentenced him to prison and ordered him to pay restitution.  The court ultimately granted him judicial release, placed him on community control, and ordered him to complete restitution within four years.  When he failed to make restitution the court revoked his community control sanction and reimposed the balance of his prison sentence.  On appeal Burgette argues that the trial court violated his constitutional rights to equal protection and due process, when it terminated his judicial release and reinstated his previously suspended sentence for failure to pay full restitution.

{¶2}    In revocation proceedings for failure to make restitution, a sentencing court must inquire into the reasons for the failure to pay.  Before a court can revoke community control and impose imprisonment, it must find the defendant willfully refused to pay or to make bona fide efforts to acquire the resources to pay.  And it must also

determine that alternatives to prison do not adequately meet the state's interest in ordering restitution. Here Burgette claimed that he paid what he was able to pay towards the restitution order. However, the trial court did not fully inquire into his reasons for failing to pay. And the evidence before the court was insufficient to establish his failure to pay was willful or intentional. Because the court's inquiry fell short of constitutional requirements, imprisonment was improper on the evidence before the court.

## I. FACTS

{¶3} In separate cases, the state charged Burgette with grand theft, and theft and burglary. Burgette pleaded guilty to the charges of grand theft and theft in return for the state's dismissal of the burglary charge. The state also agreed to recommend that he be placed on community control for a period of five years with conditions that he complete a SEPTA program, complete his GED, and pay restitution to the victims of the crimes. But because Burgette failed to complete the SEPTA evaluation, the trial court sentenced him to an aggregate prison term of three and one-half years. The trial court also ordered Burgette to pay $12,428.16 in restitution to his two victims. At the plea hearing Burgette's counsel notified the court that Burgette had only a limited ability to repay the restitution and was receiving Supplemental Security Income ("SSI") because of his history of mental illness. A court ordered competency examination had previously revealed that Burgette has "a history of mental illness" and "border line intellectual functioning."

{¶4} After over six months of imprisonment had passed, Burgette filed a motion requesting judicial release. Following a hearing, the trial court granted the motion,

suspended Burgette's sentence, and placed him on five years of community control with conditions, including that he make complete restitution to the victims within the first four years of community control. At the hearing the trial court notified him of the restitution order:

> Now I have to tell you, Mr. Burgette, what that means is this. The three year sentence is being what we call suspended or interrupted in order to allow you to do certain things, one of which is to make restitution in this case.

{¶5} After the four-year period to make complete restitution had elapsed and 24 days before his community control expired, the state filed a notice of violation alleging that Burgette had failed to pay the restitution in full within four years. At his bond hearing Burgette advised the court that he had been paying $10 a month on the restitution because that was all that he could pay:

> I'm going to start paying more on it in this coming up month. I've been paying on it each month but I ain't had a chance to really pay. I'm going to sta[r]t paying a hundred dollars on it a month. I've been paying ten on it each month but that's all I could pay at the time. But I'm getting stuff together right now.

{¶6} In the first stage revocation hearing Burgette admitted he violated the community control condition by not making complete restitution to the victims of his crimes within the specified four-year period. However, he informed the trial court of his inability to pay more on the restitution order:

> I'm paying on [the restitution] every month. I get a fixed income. I don't get much so I can only pay so much a month on it.

{¶7} In the second stage revocation hearing Burgette's counsel reiterated Burgette's difficulty in complying with the restitution condition:

[Burgette is] currently on SSI. He has been making payments through a payee. So not only is he on a fixed limited income of SSI but he doesn't have actual access to his money, his payee does.

{¶8}    Nonetheless, the trial court terminated Burgette's judicial release, imposed the balance of his previously suspended prison sentence, and ordered him to pay restitution to the victims. At the second stage hearing the trial court explained that it would not have terminated his judicial release and reimposed his previously suspended prison sentence if Burgette had acted in "reasonably good faith" in making restitution:

> Well, Ms. Baughman is accurate that we do not have debtor prisons today. And she's also accurate that [one of the victims] did have the remedy of filing a civil suit, which may or may not have been productive for him if he had followed that. But we're really not talking about total restitution here. We're talking about good faith. And that's what people show by reporting when they're on probation. That's what they show when they do the things that they're supposed to do like community service. And with respect to these rather large obligations that's, like [the victim] said, showing good faith. The Court would not have held Mr. Burgette to the standard of having to repay everything. It would have held him to a standard of trying to show that he had done what he could do. And if he thought a year ago or eighteen months ago that he was not going to be able to even come close to this that's something he should have told his probation officer. But he did not do so. And even in an SSI situation ten dollars a month – and I know I told Mr. Burgette this – you are going to have to do better than that. I told him that when he came back from prison. I wouldn't have sent him to prison if he'd shown good faith. He would have gone to the SEPTA Center. He also knows that. But he didn't show good faith earlier. And so [the victim] is likely to just be out. He's not going back to get his guns back, he's not going to get the money for them either, or his restitution. And Mr. Burgette has not produced anything to suggest to me that he was acting in reasonably good faith. If the probation officer thought that he was he or she, whoever his probation officer is, could have been subpoenaed here to testify to that effect, if that's what they would have said. I don't know that that's what they would have said. So based on that analysis the Court is going to terminate the judicial release in this case and require the Defendant to serve the balance of his sentence.[1]

---

[1] At the second stage revocation hearing, the state represented that in addition to violating the restitution condition of his community control sanction, Burgette also failed to complete his community service and did not return guns that he had stolen from one of the victims. (OP86, p. 2-3) The state never gave

## II.  ASSIGNMENTS OF ERROR

**{¶9}**  Appellant assigns the following errors for our review:

1.  The trial court erred when it terminated Mr. Burgette's judicial release and reinstated his previously suspended sentence for failure to pay full restitution in violation of Mr. Burgette's rights to equal protection. Fourteenth Amendment to the United States Constitution; Section 2, Article I, Ohio Constitution.  (December 17, 2013 Transcript, p. 7)

2.  The trial court erred when it terminated Mr. Burgette's judicial release and reinstated his previously suspended sentence for failure to make undefined "good faith" payments toward his restitution order in violation of Mr. Burgette's rights to due process.  Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I, Ohio Constitution. (December 17, 2013 Transcript, p. 7)

## III.  STANDARD OF REVIEW

**{¶10}**  In general once a court finds that a defendant violated the terms of his community control sanction, the court's decision to revoke community control may be reversed on appeal only if the court abused its discretion.  *State v. McClintock*, 4th Dist. Meigs No. 13CA4, 2013-Ohio-5598, ¶ 4.  But when a claim is made that the revocation of community control and imposing a prison term violates constitutional rights, the analysis becomes a question of law that we review de novo.  *See generally State v. Castellini*, 1st Dist. Hamilton Nos. C-110445 and C-110446, 2012-Ohio-1603, ¶ 12; *Buckmaster v. Buckmaster*, 4th Dist. Highland No. 13CA13, 2014-Ohio-793, ¶ 6 ("constitutional questions * * * are questions of law, which we review de novo, without deference to the decision of the trial court").  Because Burgette's assignments of error raise constitutional claims, we review them de novo.

## IV.  LAW AND ANALYSIS

Burgette written prehearing notice of these alleged violations, Burgette did not admit them, and the trial court did not so find.

Revocation of Community Control Based on Failure to Pay Restitution

A.  Equal Protection

**{¶11}**  In his first assignment of error, Burgette asserts that the trial court erred when it terminated his judicial release and reinstated the balance of his previously suspended sentence for failure to pay full restitution in violation of his constitutional right to equal protection.

**{¶12}**  A trial court can revoke a defendant's community control for failure to make restitution ordered as a condition of community control.  *State v. Breckenridge*, 10th Dist. Franklin No. 10AP-652, 2011-Ohio-1493, ¶ 12.  Nevertheless, a court cannot revoke probation for failure to pay restitution where there is no evidence that the defendant is able to pay.  *State v. Umphries*, 4th Dist. Pickaway No. 97CA45, 1998 WL 377768, *6 (Jul. 9, 1998); *Breckenridge* at ¶ 12.  In these instances, there must be evidence that the failure to pay or obtain employment was willful or intentional.  *Id.*; *see also State v. Wolfson*, 4th Dist. Lawrence No. 03CA25, 2004-Ohio-2750, ¶ 20 ("It is a violation of the Equal Protection Clause of the United States Constitution to revoke a defendant's probation simply because she is too poor to pay restitution where the record contains no evidence that the failure to pay, was willful or intentional or that failure to obtain employment, in order to pay was willful or intentional").

**{¶13}**  These principles emanated from *Bearden v. Georgia*, 461 U.S. 660, 668-669, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983),[2] in which the United States Supreme Court held:

---

[2] The United States Supreme Court noted that in this analysis, "[d]ue process and equal protection principals converge," but a due process analysis, focusing on fundamental fairness, might be more appropriate. *Id.* at 665.

[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

(Footnote omitted.)

{¶14} In determining whether a failure to pay restitution is willful or intentional, "a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the * * * restitution may reflect an insufficient concern for paying the debt he owed to society for his crime" and the state is "justified in revoking probation and using imprisonment as an appropriate penalty for the offense." *Id.* at 668. "But if the probationer has made all reasonable efforts to pay the * * * restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." *Id.* at 668-669.

{¶15} In this case, Burgette and his counsel repeatedly informed the trial court that he had paid $10 a month towards the restitution condition of his community control because that was all he was able to pay, that he received a fixed, limited income consisting of SSI benefits that he did not have direct access to, and that he had increased his payments towards the restitution order when he was able to do so. The

purpose of SSI " 'is to assure a minimum level of income for people who are * * * disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level.' " *Paton v. Paton*, 91 Ohio St.3d 94, 96, 742 N.E.2d 619 (2001), quoting 20 C.F.R. 416.110.

**{¶16}** The court was also aware that Burgette did not have a high school diploma as it ordered him to obtain a GED. And the court's own competency evaluation indicated Burgette had a history of mental illness and borderline intellectual functioning.

**{¶17}** The trial court made it clear that it was not punishing Burgette for his failure to satisfy the order of restitution. Rather, the court advised him it was simply looking for some evidence of good faith, which it found lacking. It reached that conclusion based largely on the passage of time and the de minimis amounts of Burgette's payments. However, we do not believe that limited analysis satisfies the requirement in *Bearden* for an inquiry into the reasons for the failure to pay and alternative sanctions.

**{¶18}** Courts must inquire into the reasons for the failure to pay. If the court finds the failure to pay was willful, i.e., the defendant had the resources to pay but chose not to do so, the court may proceed to impose a prison sentence. However, if the failure to pay was not willful, i.e., through no fault of the defendant, the court must then determine whether the defendant had made a good faith effort to acquire the means to pay. In the event the defendant's effort evidences a lack of good faith, the court may at this stage impose the appropriate sanction, including prison.

**{¶19}** But if the efforts indicate the defendant has tried in good faith but had been unsuccessful, the court can only impose confinement for failure to make restitution

if alternate sanctions are not sufficient to satisfy the state's interest in ordering restitution. Because the state's interest in ordering restitution is to make the victim whole, the alternatives available to the court are quite limited. In other words, we are not aware of anyone having discovered the means to get blood from the proverbial turnip. The only obvious alternative that comes to mind immediately is some type of restructuring of restitution. And even this option is limited to the period of community control, i.e., five years.

{¶20} Here, the trial court did not inquire into Burgette's reasons for failure to pay. There is no evidence concerning Burgette's level of income or his financial obligations during the pertinent period. There also appears to be no evidence of his employment history, efforts, and capacity to seek employment or a loan while disabled and receiving SSI. The trial court could subpoena pertinent records or it could seek information by questioning Burgette and his probation officer, and reviewing any PSI report.

{¶21} And although the trial court appears to have determined that Burgette willfully or intentionally failed to pay more of the ordered restitution, it did not have sufficient evidence before it to do so. There is nothing in the record to support the trial court's statement that when Burgette was returned from prison, the court advised him that he had to pay more than $10 a month from his SSI benefits in order to avoid revocation of his judicial release for failure to pay restitution.

{¶22} Under these circumstances, the trial court's termination of Burgette's judicial release for failure to pay and reimposition of the prison sentence constituted reversible error. A " 'sentencing court cannot properly revoke a defendant's probation

for failure to make restitution absent evidence and findings that [the defendant] was somehow responsible for the failure or that alternative methods of punishment were inadequate to meet the [s]tate's interest in punishment and deterrence.' " *State v. Dockery*, 187 Ohio App.3d 798, 2010-Ohio-2365, 933 N.E.2d 1155, ¶ 16 (1st Dist.), quoting *Bearden*, 461 U.S. at 660, 103 S.Ct. 2064, 76 L.Ed.2d 221; *Wolfson*, 2004-Ohio-2750, at ¶ 20 ("It is a violation of the Equal Protection Clause of the United States Constitution to revoke a defendant's probation simply because she is too poor to pay restitution where the record contains no evidence that the failure to pay was willful or intentional or that failure to obtain employment, in order to pay, was willful or intentional"); *State v. Harris*, 8th Dist. Cuyahoga Nos. 96460, 96461, and 96661, 2012-Ohio-802, ¶ 17 ("To imprison someone solely because he is unable to pay a fine * * * violates the Equal Protection Clause of the Fourteenth Amendment, because people without means to pay fines would receive more severe punishment than those who are capable of paying").

{¶23} The state does not point to any specific evidence in the record supporting the trial court's finding that Burgette's failure to pay the restitution within the four-year period was willful or intentional. The state did not submit evidence below concerning Burgette's ability to pay the restitution.

{¶24} Instead, the state relies on a solitary case, *State v. Pickelsimer*, 2d Dist. Greene No. 06-CA-118, 2007-Ohio-5758, in which the court of appeals upheld a trial court's revocation of community control and imposition of a prison sentence. That case, however, is manifestly distinguishable because (1) the defendant violated another community control condition—failure to follow through with chemical dependency

treatment—in addition to failing to pay restitution, and (2) the defendant used some money that she could have used to pay restitution to make payments that she did not have a legal obligation to pay.

**{¶25}** Because the trial court did not make the analysis and findings required by *Bearden* and its progeny, it erred in terminating Burgette's judicial release and reimposing the balance of his suspended sentence. A reversal and remand is appropriate for the trial court to hold an evidentiary hearing in accordance with *Bearden*. *See Dockery*, 187 Ohio App.3d 798, 2010-Ohio-2365, 933 N.E.2d 1155, at ¶ 17; *State v. Rudin*, 1st Dist. Hamilton No. C-110747, 2012-Ohio-2643, ¶ 11-13 (reversal and remand because trial court did not make necessary inquiry under *Bearden* for community-control revocation based on failure to pay restitution); *State v. Williams*, 2d Dist. Greene No. 2007-CA-28, 2008-Ohio-2385 , ¶ 36-42 (reversal and remand of community-control revocation for failure to pay restitution because trial court did not inquire into defendant's ability to pay restitution). We sustain Burgette's first assignment of error.

## B. Due Process

**{¶26}** In his second assignment of error, Burgette contends that the trial court erred when it terminated his judicial release and reinstated his previously suspended sentence for failure to make undefined "good-faith" payments towards his restitution, in violation of his constitutional right to due process. Because of our disposition of Burgette's first assignment of error, this assignment is moot and we do not address it. App.R. 12(A)(1)(c).

## V. CONCLUSION

{¶27}  Having sustained Burgette's first assignment of error, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

JUDGMENT REVERSED
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
     William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**